**Larry WILLIS, Appellant,**

v.

**Ruby WILLIS, Appellee.**

**No. 2010–CA–002328–MR.**

Court of Appeals of Kentucky.

March 9, 2012.

See also 304 S.W.3d 707.

Susan Hanrahan McCain, Springfield, KY, for appellant.

Janet L. Staton, Danville, KY, for appellee.

Before TAYLOR, Chief Judge; DIXON and LAMBERT, Judges.

## OPINION

LAMBERT, Judge:

Larry Willis has appealed from the November 30, 2010, order of the Boyle Family Court modifying a Qualified Domestic Relations Order ("QDRO") entered on July 16, 2009. Because we hold that the family court abused its discretion in modifying the QDRO under the circumstances

of this case, we must reluctantly reverse the family court's order.

Larry and Ruby Willis were married on November 28, 1992, in Cynthiana, Kentucky. They separated in March 2007, and Ruby filed a petition to dissolve the marriage on March 29, 2007. Pursuant to court order, the parties participated in mediation on July 30, 2007, and were able to reach an agreement. While Larry proved reluctant to sign the agreement, he ultimately did so. However, what transpired over the next few weeks changed the course of the proceedings.

It is apparent from the record that the proceedings were fraught with violence. This violence ultimately led to the tragic shooting of Ruby by Larry on August 22, 2007, when she returned to the marital residence to retrieve her personal items and furniture. Larry shot Ruby twice, once in the shoulder and once in the abdomen, and Ruby also sustained a massive head injury, apparently from being kicked. Ruby is permanently disabled from the injuries she sustained that day and has been appointed guardians and conservators to care for her needs.

As a result of his actions, Larry was charged with attempted murder and first-degree assault. The attempted murder charge was amended to second-degree assault, and Larry was convicted on both counts following a jury trial. He received ten- and five-year sentences, which were ordered to be served concurrently for a total of ten years. This Court affirmed Larry's conviction in *Willis v. Commonwealth,* 304 S.W.3d 707 (Ky.App.2010). We note tangentially that the family court found Larry in contempt for sending Ruby a birthday card in 2009, along with a disturbing, four-page, handwritten letter. He was sentenced to an additional 176 days in jail for this contemptuous behavior, to be served consecutively to his felony criminal sentence. Larry attempted to appeal the family court's ruling to this Court, but his appeal was dismissed as untimely on March 8, 2011. *See Willis v. Willis,* appeal No. 2010–CA–001162–MR.

Meanwhile, the dissolution proceedings continued. Prior to the final hearing on September 26, 2008, the parties were able to reach an agreement on most issues. On December 12, 2008, Ruby filed a motion attaching the property and separation agreement as drafted by Larry's attorney and requesting several modifications. These modifications included substituting the word "property" for "maintenance" to avoid potential tax consequences as well as addressing tax liability and bankruptcy. Ruby did not raise any objection to the section addressing Larry's nonmarital portion of his retirement. Paragraph 4(A) specifically provided that Larry had $292,536.05 in his retirement account at the time of the marriage, which was to be assigned to him, less a $91,000.00–offset to Ruby related to his February 2008 payout from Bluegrass Energy. In response, Larry indicated that he was not opposed to the substitution of words or to removing the bankruptcy provision as requested by Ruby, but he did oppose being held responsible for the tax consequences on the $91,000.00 he received from Bluegrass Energy. In addition to filing the property and settlement agreement, Ruby also filed her written deposition, which provided the family court with the statutory factors to dissolve the marriage. In the deposition, Ruby stated that she had reviewed the terms of the decree, including the agreement, and that the decree fairly disposed of all issues related to marital and nonmarital property and debts as well as maintenance.

On December 22, 2008, the family court entered the final decree of dissolution of marriage incorporating the parties' prop-

erty and settlement agreement. Pursuant to the terms of the agreement, Ruby received all of the marital property, including the marital home, her retirement, and all personal property, with the exception of items that had been retrieved by Larry's family. Included in the personal property were Larry's truck and her Lexus automobile. Ruby was also awarded Larry's retirement in Paragraph 3(C):

> With the exception of the non-marital portion of the Husband's retirement account, detailed in Paragraph 4, the Wife shall be entitled to retain all amounts contained in the Husband's account with Wachovia. She has already received the proceeds from the account with Edward Jones. In the event that a Qualified Domestic Relations Order is necessary for the Wife to receive said money, any such Order/s shall be prepared by counsel for the Wife.

In addition, Ruby was awarded $91,000.00 from the nonmarital portion of Larry's retirement as an offset as detailed above. This amount was to be paid via a QDRO prepared by Ruby's attorney.

The family court assigned Larry his nonmarital property, including rental properties and personal property in his or his family's possession. Larry was also assigned the nonmarital portion of his retirement as follows: "At the time of the marriage, the Husband had $292,536.05 in his retirement account. This amount, minus any offset to the Wife provided for in Paragraph 3(D) [the $91,000.00–offset] of this Agreement, shall be assigned to the Husband." The agreement provided that it contained the entire understanding of the parties, that it would not be subject to modification by the parties or the court unless in writing and signed by the parties, and that it accomplished a full restoration

of nonmarital property "except to the extent one party has freely transferred to the other nonmarital property in consideration of the terms of this Agreement."[1]

On July 15, 2009, Ruby filed a motion requesting the family court to enter a tendered QDRO. The family court entered the QDRO the following day. We shall set forth the applicable provisions of the QDRO below:

> 1. That the name of the affected qualified retirement account is the Wachovia Securities account held in the name of the Respondent, Larry Nelson Willis....
>
> 2. That the Petitioner, Ruby Stamper Willis, is entitled to received [sic] all of the marital amounts contained in the Wachovia Securities account held in the name of Larry Nelson Willis as well as an additional $91,000.00 from the nonmarital accounts contained in said account. That the Respondent had $292,536.05 in the Wachovia Securities account at the time of the marriage. That the Petitioner is entitled to $91,000.00 of that $292,536.05 as set forth in paragraph 3(d) in the Settlement Agreement. Therefore the Respondent shall be entitled to retain $201,536.05 of the account as his nonmarital portion and the Petitioner shall receive all of the remaining amounts contained in said account.
>
> . . . .
>
> 6. Pursuant to the Decree of the Dissolution of Marriage entered on December 22, 2008, which approved, and incorporated by reference therein, a Settlement Agreement executed by the parties hereto, Wachovia Securities is instructed to pay directly to the Edward D. Jones Trust Company, Trustee of the

1. The family court entered an amended decree on April 23, 2010, to amend the findings of fact to include the jurisdictional proof necessary to enter the decree.

account held for the benefit of Ruby Stamper Willis, the following sum: all of the amounts contained in the Wachovia Securities account held in the name of Larry Nelson Willis with the exception of the amount of $201,536.05.

. . . .

12. The court reserves the right to amend or modify this Order, if necessary, in order to carry out the intent of this Qualified Domestic Relations Order through compliance with the requirements of the Equity Retirement Act of 1984 and/or any other state or federal law dealing with this subject, compliance with which is necessary in order to carry out the parties' intention to permit the Petitioner to share in Respondent's Wachovia Securities Account to the precise extent provided herein.

Fifteen months later, on October 14, 2010, Ruby moved the family court to modify the QDRO, which had carved out $201,536.05 from the Wachovia Securities retirement account and specifically designated this amount as Larry's nonmarital property. Ruby explained in her motion that Larry had two Wachovia Securities accounts and that an overall accounting of the accounts from the date of the marriage in 1992 until the date the QDRO was entered revealed a 17% loss in value in one and a 23% loss in the other related to the stock market drop. Overall, these losses totaled $130,826.00. Because the QDRO referenced the amount in the retirement accounts at the time of the marriage in 1992 as Larry's nonmarital property, before the large market losses had happened, she requested that the family court amend the QDRO to reflect that his nonmarital portion be reduced by the same market loss as was her marital portion. Accordingly, Ruby requested that the family court subtract $130,826.00 from Larry's nonmarital portion and award that amount

to her through an amendment of the QDRO.

The family court held a hearing on Ruby's motion, during which the parties presented their respective positions regarding amendment of the QDRO. Ruby, through her counsel, explained that Larry had provided the statement of how much he had in the account at the time of the marriage and that she had not taken into consideration market losses that were incurred when negotiating the property settlement agreement. The family court asked whether there had been any discussion of percentages rather than a specific number when delineating Larry's nonmarital portion; Ruby responded that there had not been any. The court then pointed out that the property settlement agreement was a bargained-for agreement on which all of the parties and attorneys had signed off. At the hearing, Ruby presented sworn testimony from William Griffin, Jr., an Edward Jones financial advisor, who had examined the month-end statements and calculated the losses. He testified that Larry's nonmarital portion would have suffered the same losses as did the marital portion. However, no documentary evidence was presented or introduced at the hearing.

At the conclusion of the hearing, the family court directed both parties to submit proposed findings of fact and conclusions of law. Both Ruby and Larry filed proposed findings and conclusions as ordered, and the family court adopted and entered Ruby's version on November 30, 2010, thereby rejecting Larry's. The findings of fact are as follows:

1. That a Qualified Domestic Relations Order was previously entered by the Court on July 16, 2009 and it excluded $201,536.05 from Respondent's retirement account as non-marital.

2. That the Respondent had two accounts held by Wachovia Securities. An accounting of Respondent's account numbered * * * *–* * * * from the date of the marriage, November 28, 1992, to the entry of the Qualified Domestic Relations Order, July 16, 2009, reveals that the account suffered a loss of 23.4% which calculates to a market loss of $59,377.39. An accounting of Respondent's account numbered * * * *– * * * * during the same timeframe as previously referenced reveals that the account suffered a loss of 21.2% which calculated to a market loss of $86,322.44. The total loss of the overall market drop therefore is $145,699.83.

3. The attached chart and explanation provides an analysis of the percentages lost in the value of each account.[2]

Based upon these findings, the family court concluded that the QDRO improperly excluded $201,536.05 from Larry's retirement account as nonmarital property because his portion should have suffered the same market loss as did Ruby's marital portion. Therefore, the family court ordered that $145,699.83 should be subtracted from Larry's nonmarital portion and awarded to Ruby through a modification of the QDRO, with the remaining balance awarded to Larry as his correct portion. This appeal follows.

■ On appeal, Larry argues that the family court abused its discretion in reassigning his nonmarital property to Ruby; that the parties entered into a valid separation agreement providing for the distribution of property; that the family court did not have jurisdiction to modify the QDRO; and that Ruby failed to appeal from either the decree or the original QDRO, which are no longer subject to appeal. Ruby contends that Larry failed to properly preserve the issues he raised for appeal, but that the family court properly modified the QDRO, not through reassignment but by utilizing the proper valuation. Larry adequately addressed the preservation issue, both in his tendered findings of fact, conclusions of law, and judgment as well as in his reply brief, and we are persuaded that the issues raised were properly preserved for our review.

■ The parties also dispute whether the family court should have granted Ruby's motion to amend the November 30, 2010, order to include the referenced pages. While we can discern no abuse of discretion in permitting the pages to be attached to the order, we cannot identify any support these pages might provide to the court's ruling because they were not provided at the hearing, nor were they explained by a qualified witness. Furthermore, the market losses reflected in the attached documents do not match the numbers testified to at the hearing or listed in Ruby's motion to amend.

Turning now to the merits of Larry's appeal, we must hold that the family court improperly modified the QDRO and abused its discretion in reassigning $145,699.83 of Larry's nonmarital property to Ruby. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000).

■ First, we agree with Larry that the family court violated Kentucky Revised Statutes (KRS) 403.190 in essentially reassigning his nonmarital property to Ruby. As an initial matter, the family

---

2. We note that the chart and page of explanation referred to in the order were not included in the written record until months after the notice of appeal was filed, when the family court granted Ruby's motion to amend to include the referenced attachments.

court must "assign each spouse's property to him." KRS 403.190(1). Once that has been accomplished, the family court must divide the marital property in just proportions after considering several factors. *Id.* Because the parties agreed that $292,536.05 (less the $91,000.00–offset) was specifically Larry's nonmarital property, and there has been no allegation that this agreement was reached by fraud or duress, nor any finding that the agreement was unconscionable, the court cannot now alter the terms of the agreement. We disagree with Ruby's assertion that this was a matter of proper valuation rather than reassignment. Rather, the only specific values in the separation agreement and QDRO were the nonmarital portion of Larry's retirement account and the amount that was to be offset and awarded to Ruby. The parties, when entering into the separation agreement, could have chosen to use percentages or some other formula to calculate the nonmarital portion of Larry's retirement; instead, they chose to include the specific amounts.

■ We also agree with Larry that the parties entered into a valid separation agreement. KRS 403.180(2) provides that, "the terms of the separation agreement . . . are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." Ruby did not raise the issue of unconscionability in her motion, but she did mention it during the hearing where she described the terms of the agreement as a bad bargain. However, Larry cited to *Peterson v. Peterson,* 583 S.W.2d 707, 711–12 (Ky.App.1979), to support his argument that a "bad bargain" does not equate to unconscionability:

The modification cases define unconscionability as "manifestly unfair and inequitable." *Wilhoit v. Wilhoit,* Ky., 506 S.W.2d 511 (1974). Such a definition should also apply to a court's initial ruling on an agreement under KRS 403.180. Thus, an agreement could clearly be set aside on the basis of fraud, undue influence, or overreaching. On the other hand, an agreement could not be held unconscionable solely on the basis that it is a bad bargain.

■ Finally, we agree with Larry that the family court did not have jurisdiction to modify the QDRO fifteen months after its entry and that Ruby failed to timely appeal from either the final decree (which incorporated the property and separation agreement) or the QDRO. Ruby had ten days from the entry of the decree or the QDRO to move for an amendment of either ruling pursuant to Kentucky Rules of Civil Procedure (CR) 59.05, or she could have sought relief pursuant to CR 60.02. She did not do so, and in fact she did not cite to any rule or statute in her motion to modify the QDRO. Furthermore, Ruby did not appeal from either the final decree or the QDRO. Therefore, Ruby is not permitted to do so via a motion to modify, which was made fifteen months after the QDRO was entered and almost two years after the final decree was entered.

For the foregoing reasons, we hold that the Boyle Family Court abused its discretion in modifying the QDRO and reassigning a portion of Larry's nonmarital property to Ruby. Accordingly, the family court's order entered November 30, 2010, is reversed.

ALL CONCUR.