IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2022 Session

## ANGELA MARIE HEISIG v. ANDREW CARL HEISIG

**Appeal from the Circuit Court for Hamilton County**
**No. 17D647   Kyle E. Hedrick, Judge**

_____

**No. E2021-00925-COA-R3-CV**
_____

This appeal requires interpretation of a clause in the parties' marital dissolution agreement. The final decree, entered in January 2018, incorporated the parties' agreement awarding the wife $130,000 from the husband's 401(k). After several rounds of qualified domestic relation orders and other court orders, the trial court ultimately held that the wife was entitled to $130,000 plus approximately four months of statutory interest. The wife appealed, seeking earnings on the $130,000 in addition to interest. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, Angela Marie Heisig.

Harold L. North and Nathan L. Kinard, Chattanooga, Tennessee, for the appellee, Andrew Carl Heisig.

## OPINION

## I. BACKGROUND

Angela Marie Heisig ("Wife") filed a complaint for divorce on March 14, 2017, against Andrew Carl Heisig ("Husband"). On January 18, 2018, the trial court entered a

final decree of divorce ("the Decree").[1] It incorporated a marital dissolution agreement ("MDA"). Section 5.5 in the MDA awarded Wife $130,000 from Husband's 401(k), directed the "remaining balance" to Husband, and required Wife to prepare a Qualified Domestic Relations Order ("QDRO"):

> 5.5 <u>Husband's Retirement Plan</u>: Wife shall receive One Hundred Thirty Thousand ($130,000.00) from Husband's 401k through his employer UNUM. Same shall be divided pursuant to a Qualified Domestic Relations Order. Wife's attorney shall prepare the Qualified Domestic Relations Order. For purposes of preparation of the Qualified Domestic Relations Order, Husband shall provide documentation reflecting current account balances; name, address and telephone number for the plan administrator. Said documentations shall be provided within 15 days of the execution of this agreement. The remaining balance of said 401k, shall be the sole property of Husband.
>
> The parties acknowledge and agree that due to the extensive nature of the Qualified Domestic Relations Orders, there will be additional attorney fees of $500.00, for the preparation of each Qualified Domestic Relations Order, and Husband will reimburse Wife for same within 60 days of the entry of the Final Decree of Divorce.
>
> Husband is awarded all right, title and interest to his pension, and the same is an equitable division, based upon the totality of this agreement. By execution of this agreement, Wife waives and relinquishes any right, title and interest to said account.

§ 5.5. Draft QDROs were submitted in January and February 2019, specifically providing that Wife would not be entitled to earnings on the $130,000. In August 2019, Wife's counsel sent a draft QDRO that included an award of earnings on the $130,000. Husband filed a timely objection to it, as the proposed QDRO awarded to Wife "the benefit of any gains (or losses) under the plan since the entry of the Final Decree, on January 18, 2018." A joint petition to reopen the case was entered on September 5, 2019.

Despite the fact that it was Wife's obligation under the MDA to prepare a compliant QDRO, on October 31, 2019, Husband submitted a proposed QDRO which did not provide for gains or losses:

> 8. The Alternate Payee's [Wife's] interest in the Plan shall be $130,000.00 of the Participant's [Husband's] total vested account balance under the Plan as of the Valuation Date.

---

[1] There are no hearing transcripts in the record.

9. The Alternate Payee's award is not entitled to earnings (defined as gains, losses, dividends and interest) from the Valuation Date to the date that the award is segregated from the Participant's account. From and after the Date of Segregation, the Alternative Payee's award shall be held in an account under the Plan and shall be entitled to all earnings attributable to the investments therein.

The trial court signed Husband's proposed QDRO on December 13, 2019. Wife thereafter filed a motion to alter or amend the QDRO which had just been entered, arguing that she should receive interest as well as any earnings on the $130,000 **because the Decree was entered on January 18, 2018**. The trial court granted Wife's motion only in part, permitting one-year's interest on the sum but not granting the request for the earnings. The interest totaled $9,685. On January 28, 2020, Husband requested that the court revise its judgment to eliminate the grant of statutory interest.

On April 13, 2020, the trial court partially granted Husband's motion regarding interest, with the QDRO amended to award Wife $132,839.16. ($130,000 plus interest of $2,839.16). The amended QDRO was filed on August 5, 2020. This QDRO, however, erroneously included earnings to Wife from January 18, 2018. Around April 2021, Wife sent the QDRO to the 401(k) account manager (Fidelity). Instead of $132,839.16, $188,328.81 was transferred by Fidelity. Husband moved for the court to require Wife to repay the excess over $132,839.16, and provide relief from the August 5, 2020 order. Wife responded that she was entitled to "gains or losses," but acknowledged **the proper valuation date was . . . December 13, 2019**.

On July 15, 2021, the trial court set aside the August 5, 2020 QDRO. The inclusion of earnings to Wife was acknowledged to be a "mistake." The trial court ordered that a QDRO be entered reflecting that Wife was only entitled to $132,839.16, and another requiring the transfer of the excess $55,489.65 from Wife back to Husband. On July 26, 2021, the court entered a QDRO awarding Wife $132,839.16 from the 401(k).[2] Wife filed a timely notice of appeal on August 13, 2021.

## II. ISSUE

Wife raises one issue on appeal which we restate as follows: Did the trial court err in failing to allocate Wife gains or losses when the final divorce decree awards her a specific dollar amount from Husband's securities-based 401(k), and he is awarded the "remaining balance."

---

[2] The other QDRO is not in the record.

## III. STANDARD OF REVIEW

The interpretation of a contract, such as an MDA, is a matter of law. The trial court's conclusions of law are reviewed pursuant to a de novo standard with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005).

## IV. DISCUSSION

Husband and Wife agreed to divide the 401(k) by providing to Wife a specific sum, $130,000—not a percentage or fraction—and providing to Husband the "remaining balance." According to Husband, Wife was delinquent in getting a QDRO prepared, entered, and submitted to the plan administrator. During that period of time after the Decree was entered, Husband's 401(k) significantly increased in value. Wife argues that she should receive the market gains in the 401(k) account as a result of the $130,000 being in the account during that period. Husband contends that this is contrary to Tennessee law and the dominant view in other states. He further asserts that declining to award gains (or losses) on the $130,000 award is the most natural reading of the MDA, as to award gains on $130,000 would obviously *not* be to award $130,000.

The MDA, after specifying Wife's $130,000 award, provides: "The remaining balance of said 401k, shall be the sole property of Husband." The MDA specifically states that, after Wife receives her $130,000, an unspecified "remaining balance" goes to the Husband. What he gets may fluctuate, but what she gets will stay fixed at $130,000 and would not change in response to market fluctuations.

Upon our review, the Decree and MDA in this case are unambiguous. The Decree awarded a specific dollar figure to Wife from the 401(k): $130,000. The court intended to award a fixed sum from the account. The specific language used—a grant of a specific sum—unambiguously means subsequent market gains or losses have no relevance to Wife's award. Awarding a fixed sum to Wife meant that, to Wife's benefit, she avoided the risk of the market dropping between the date of the Decree and the date of distribution. *See* 29 U.S.C. § 1056(d)(3)(c)(ii). Wife has failed to demonstrate that the QDRO entered by the trial court was an erroneous interpretation of the Decree. We affirm the court's final decision.

Our determination is consistent with courts elsewhere. *See, e.g., In re Taber-McCarthy*, 993 A.2d 240, 245 (N.H. 2010); *Allred v. Allred*, 220 A.3d 358, 362 (Md. Ct. Sp. App. 2019); *Graham v. Graham*, 123 So. 3d 625, 628 (Fla. Dist. Ct. App. 2013); *see also Willis v. Willis*, 362 S.W.3d 372, 378 (Ky. Ct. App. 2012); *Bernel v. Bernel*, 930 N.E.2d 673 (Ind. Ct. App. 2010); *Fry v. Fry*, 775 N.W.2d 438, 442 (Neb. Ct. App. 2009); *Romer v. Romer,* 44 So. 3d 514, 516 (Ala. Civ. App. 2009); *Zebrowski v. Zebrowski*, 813 N.Y.S.2d 803, 805 (App. Div. 2006); *Buchanan v. Buchanan*, 936 So. 2d 1084 (Ala. Civ. App. 2005).

We note that the $130,000 allocated to Wife could not belong to Wife until after the plan administrator approved the QDRO and, in fact, distributed the funds (which is what makes the order a "qualified" order). *See Jordan v. Jordan*, 147 S.W.3d 255, 261-62 (Tenn. Ct. App. 2004). Thus, before the $130,000 was actually distributed from Husband's 401(k), it was not owned by Wife and could not be viewed as Wife's asset. Accordingly, the gains in Husband's 401(k) between the date of the Decree, and its ultimate division by the plan administrator, were not gains "generated" by Wife's assets.

Upon Wife agreeing to a fixed sum, she received the "comfort and security" of avoiding risk of potential loss. *Taylor v. Taylor*, 653 N.W.2d 524, 529 (Wis. Ct. App. 2002) ("If a party desires the comfort and security of a fixed dollar sum from a divorce property division, that is what he or she should bargain for ...."). The terms of a property division in a final judgment cannot be amended by a subsequent agreement, such as a QDRO. *Pruitt v. Pruitt*, 293 S.W.3d 537, 544 (Tenn. Ct. App. 2008). To the extent a QDRO modifies the division of marital property, it is "unenforceable and must be vacated." *Id.*

## V. CONCLUSION

The judgment of the trial court is affirmed and the case remanded to the trial court for collection of the costs below. Costs on appeal are assessed to the appellant, Angela Marie Heisig.

_____
JOHN W. MCCLARTY, JUDGE