### Sarah Dale PRUITT

v.

### Michael A. PRUITT.

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 8, 2008 Session.

Dec. 1, 2008.

Permission to Appeal Denied by Supreme Court May 26, 2009.

James L. Weatherly, Jr., and Sarah S. Richter, Nashville, Tennessee, for the appellant, Michael A. Pruitt.

James H. Drescher, Nashville, Tennessee, for the appellee, Sarah Dale Pruitt.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. PATRICIA J. COTTRELL, P.J., M.S., not participating.

Husband appeals the finding that he was in willful contempt of the Final Decree of Divorce and the Qualified Domestic Relations Order (QDRO), which were entered at the time of the parties' divorce in 1997, pursuant to which, *inter alia,* Wife was to be designated as the surviving spouse for purposes of Husband's annuity. In October of 2004, Husband took early retirement, after which the 1997 QDRO was presented to the pension plan administrator for the administrator's acceptance. The administrator rejected the QDRO because it was not in compliance with the plan's internal guidelines. In 2006, the parties agreed to an amended QDRO that materially and substantively changed the division of marital property in the Final Decree and submitted it to the plan administrator. The administrator rejected the amended QDRO because it too was not in compliance with the plan's internal guidelines. Thereafter, it was discovered that Husband had irrevocably waived the surviving spouse option when he took early retirement. Believing Husband had willfully violated the Final Decree of Divorce and QDRO, Wife filed this contempt action. The trial court found Husband in contempt because he willfully failed to designate Wife as the survivor beneficiary. We have determined that the respective rights and responsibilities of the parties flow from the Final Decree of Divorce and the initial QDRO, which was contemporaneously entered with the Final Decree in January 1997. We have also determined that Husband violated the court's order; however, we find the evidence insufficient to prove beyond a reasonable doubt that Husband's failure to designate Wife as the survivor beneficiary was willful.

Michael A. Pruitt ("Husband") and Sarah Dale Pruitt ("Wife") were divorced on January 15, 1997. The Final Decree of Divorce entered on that date expressly incorporated the parties' Marital Dissolu-

tion Agreement.[1] The MDA provided, *inter alia,* that Husband's pension and retirement benefits, including certain rights and assets from his pension and retirement, would be divided, and the division of the pension and retirement benefits would be accomplished by a separately entered Qualified Domestic Relations Order (QDRO).

No appeal was taken and no post judgment motions were timely filed; thus, the Final Decree of Divorce became a final, non-appealable judgment in February of 1997.

Husband was a career employee of General Motors Corporation, which provided pension and retirement benefits to its career employees. At the time of the divorce, Husband had vested interests in certain pension and retirement benefits, although the specific amount of the benefits would not be determined until he retired. Accordingly, the MDA contained the following relevant provision:

11. *Pension/Retirement/Employment Benefits.*

The parties agree and represent that the pension and retirement benefits of Husband need to be divided by this Agreement, but agree that there may be certain rights and assets from his pension and retirement that cannot be conveniently divided at this time. The parties therefore agree that [Wife] shall receive forty percent (40%) of the total of all such benefits and rights accrued up to the date of execution of this Agreement that are not awarded elsewhere herein. This shall be accomplished by a separately entered Qualified Domestic Relations Order (QDRO), dividing the said rights.

As the last sentence of the above paragraph states, a QDRO was prepared and signed by the parties and their counsel and filed with the court contemporaneous with the Final Decree.[2] The QDRO, which was approved by the trial court, was entered on January 23, 1997, eight days after the entry of the Final Decree of Divorce. The QDRO contained the following pertinent language:

Also, the Alternate Payee [Wife] shall be entitled to a pro-rata share of any employer-provided early retirement subsidy provided to the Participant [Husband] on the date of his retirement. The amount payable to the Alternate Payee shall be increased in accordance with the Plan Administrator's practices and the Plan's actuarial principles. Such pro-rata share shall be based on the proportion that the Alternate Payee's Benefit holds to the Participant's final Accrued Benefits. Should the Participant's benefit change due to a return to employment, the Alternate Payee's monthly benefit amount will be revised correspondingly.

For purposes of determining benefits payable under a qualified pre-retirement survivor annuity and qualified joint and survivor annuity, as such terms are defined in Section 417 of the Code, the Alternate Payee shall be treated as the surviving spouse of the Participant for purposes of Sections 401(a)(11) and 417 of the Code with respect to the Alternate Payee's Benefit to the extent permitted by the provisions of the Plan. For purposes of determining the eligibility for such surviving spouse benefits, the Alternate Payee and the Participant have satisfied the one (1) year marriage requirement as enumerated in Sections 401(a)(11) and 417(d) of the Code.

---

1. The MDA was dated October 1, 1996.

2. The QDRO was filed with the clerk less than a week after the Final Decree was entered.

Because Husband had not yet retired, the QDRO was not presented to the plan administrator. Instead, the QDRO remained on file pending his retirement. Seven years later, in October of 2004, Husband decided to take early retirement from General Motors. Because he was retiring ten years before being eligible for social security benefits, Husband was entitled to receive an early retirement supplement from General Motors, which was in addition to his pension.[3]

In 2004, as a consequence of Husband's retirement, Wife's counsel submitted the 1997 QDRO to Husband's pension plan administrator. The plan administrator rejected the QDRO for failure to comply with internal guidelines. Thereafter, a second QDRO was agreed to by the parties and their counsel and entered by the trial court on February 22, 2006. The provisions of the second QDRO were significantly different from the 1997 QDRO. Notably, the 2004 QDRO provided that Wife was "not entitled to any portion of the early retirement supplement, interim supplement, or temporary benefit." However, the surviving spouse provision remained unchanged in the second QDRO. The record does not explain why the benefits afforded Wife under the two QDROs are substantially different.

The plan administrator rejected the 2004 QDRO, again for failure to comply with internal guidelines. After the plan administrator rejected the second QDRO, Wife learned that she was not designated as "a surviving beneficiary" of Husband's pension plan. It is disputed why Husband failed to designate Wife as the surviving beneficiary.[4] Nevertheless, when Husband filed his retirement papers with the plan administrator, he did not designate Wife as the surviving beneficiary. Unfortunately, the failure to designate Wife as the surviving beneficiary cannot be corrected; this was foreclosed once his retirement benefits went into effect. Accordingly, neither the parties nor the court has the present ability to designate Wife as the surviving beneficiary.

On November 22, 2006, Wife filed a Petition for Contempt against Husband on the grounds that he willfully failed to designate her as the surviving beneficiary and failed to secure her share of the retirement benefits. After a hearing, the trial court found Husband in "willful criminal contempt of the Final Decree of Divorce and the Qualified Domestic Relations Order (QDRO) which was entered at the time of the parties' 1997 divorce." Specifically, the trial court found that Husband "failed to properly and timely designate [Wife] as his survivor beneficiary, which designation was totally his responsibility" and required Husband to "purchase an annuity or obtain additional life insurance to put [Wife] in the same position she would have been in had [Husband] properly opted for survivors' benefits, in favor of [Wife], as required by the original 1997 QDRO, when he retired." The trial court also determined that Wife was "entitled to twenty-nine percent (29%) of [Husband's] gross retirement payments, notwithstanding the fact that he opted for early retirement" because "[t]he original 1997 QDRO specifically addressed the division of any early retirement benefits" and Husband's "attempt to disavow or ignore those provisions and to pay [Wife] a

---

3. The early retirement supplement would taper off until he was eligible for social security benefits.

4. Husband insists he was confused by the advice given him at the time of his retirement and mistakenly failed to designate her as his surviving spouse; Wife insists he willfully failed to designate her as the surviving spouse.

decreased amount is likewise rejected." Husband was also ordered to pay Wife's attorney's fees and expenses. This appeal followed.

## ISSUES

Husband presents several issues for our consideration including: (1) whether there was sufficient evidence upon which to find Husband in willful criminal contempt of the court's final decree of divorce and the 1997 QDRO; (2) whether the court erred in ordering Husband to pay a percentage of his early retirement supplement to Wife; and (3) whether the court erred in awarding Wife her attorney's fees and expenses.[5]

## ANALYSIS

Before we analyze the issues presented by Husband, we find it necessary to determine the respective rights and responsibilities of the parties concerning the marital property at issue, as they are highly disputed.

■■■ The matters at issue arise from the division of the parties' marital property at the time of the parties' divorce in 1997. A Final Decree of Divorce that incorporates the spouses' marital dissolution agreement is *"the controlling document that sets forth the division of property."* *Cook v. Cook*, No. E2007–00750–COA–R3–CV, 2008 WL 555692, at *8 (Tenn.Ct.App. Feb. 29, 2008) (emphasis added). Once the Final Decree of Divorce becomes a final, non-appealable judgment, it is no longer subject to modification. *Johnson v. Johnson*, 37 S.W.3d 892, 895 (Tenn. 2001) (citing *Towner v. Towner*, 858

S.W.2d 888, 892 (Tenn.1993); *Vanatta v. Vanatta*, 701 S.W.2d 824, 827 (Tenn.Ct. App.1985)). It is undisputed that Husband's pension and retirement benefits were marital property. We will, therefore, look to the Final Decree of Divorce, and the documents incorporated therein, to determine the respective rights and responsibilities of the parties.

■■■ The MDA, which was expressly incorporated into the Final Decree, provided a general statement of how the parties agreed to divide Husband's pension and retirement benefits between Husband and Wife. After acknowledging that there were "rights and assets from his pension and retirement that cannot be conveniently divided at this time," the parties agreed that Wife shall receive 40% of all such benefits and rights accrued up to the execution of the MDA and that this shall be accomplished by a separately entered QDRO, dividing these rights. The referenced QDRO, which was contemporaneously entered with the Final Decree,[6] provided in pertinent part that Wife "shall be entitled to a pro-rata share of any employer-provided early retirement subsidy provided to ... Husband on the date of his retirement." The QDRO also expressly provided that Wife shall be treated as "the surviving spouse" of Husband for purposes of determining benefits payable under "a qualified pre-retirement survivor annuity and qualified joint and survivor annuity."

Although the MDA did not set forth specifics concerning the survivor benefit or early-retirement benefit now at issue, the QDRO expressly referenced in the MDA, and which was contemporaneously entered

---

5. Husband also contended that the petition for criminal contempt was barred by the statute of limitations. Our ruling that the evidence was insufficient to hold Husband in criminal contempt renders this issue moot; therefore, it has not been addressed.

6. The initial QDRO was approved by the trial court and entered on the minutes within eight (8) days of the entry of the Final Decree of Divorce.

with the MDA and Final Decree, provided the missing details. Because the QDRO was expressly incorporated into the MDA, and thus the Final Decree of Divorce, and was contemporaneously executed and entered therewith, the QDRO must be treated as part of the parties agreement to divide the marital property. *See Thornton v. Thornton*, 277 Mich.App. 453, 746 N.W.2d 627, 629–30 (2007) (holding the provisions of the contemporaneous QDRO must be treated as part of the settlement because the parties approved the content of the judgment of divorce at the same time they approved the initial QDRO referred to by the judgment of divorce).[7]

The provisions of the contemporaneous QDRO read together with those of the MDA expressly provide that Wife shall be entitled to a pro-rata share of Husband's early retirement subsidy and Wife shall be designated as the surviving spouse for purposes of Husband's survivor annuity. The QDRO and the MDA were incorporated into the Final Decree of Divorce that became a final, non-appealable judgment in 1997. Therefore the terms and provisions therein were no longer subject to modification. *See Johnson*, 37 S.W.3d at 895; *Towner*, 858 S.W.2d at 892; *Vanatta*, 701 S.W.2d at 827.

We acknowledge that in 2006, several years after the Final Decree became a final, non-appealable judgment, the parties entered into a second QDRO. Admittedly a revision to the 1997 QDRO was necessary because the plan administrator had rejected the initial QDRO due to the fact it was in conflict with internal guidelines of the plan.[8] Because the 1997 QDRO and MDA were part of a judgment that had become final and non-appealable, the revisions could not materially or substantially modify the division of marital property as set forth in the Final Decree of Divorce.

7. In *Thornton*, the plaintiff "signed the judgment of divorce on August 26, 1993, and her attorney signed it on September 7, 1993. Plaintiff's attorney signed the QDRO on August 26, 1993. Defendant and his attorney signed the judgment of divorce on September 1, 1993, and defendant's attorney signed the QDRO on the same day. The trial court signed the judgment of divorce on September 14, 1993, and the QDRO on September 15, 1993." *Thornton*, 746 N.W.2d at 629 n. 1.

8. QDROs are creatures of the Employee Retirement Income Security Act (ERISA) of 1974 and the Retirement Equity Act (REA) of 1984. The purpose and limited role of QDROs is explained by the Michigan Court of Appeals in *Roth v. Roth*, 201 Mich.App. 563, 506 N.W.2d 900, 902–03 (1993).

"Congress passed the Employee Retirement Income Security Act (ERISA) of 1974 to provide better protection for beneficiaries of private employee pension plans." *Rohrbeck v. Rohrbeck*, [318 Md. 28] 566 A.2d 767 (Md.1989). ERISA contained a preemption provision that established pension plan regulation as exclusively a federal concern. (citations omitted). An anti-alien-

ation provision included in the Act precluded plan participants from assigning or alienating their benefits under pension plans subject to the act. 29 U.S.C. § 1056(d)(1); 26 U.S.C. § 401(a)(13).
The combination of anti-alienation and preemption provisions eventually raised a question as to the validity of state domestic relations orders requiring payment of pension benefits to ex-spouses, ineligible plan beneficiaries. *Rohrbeck, supra*. Apparently, the question had not been anticipated by Congress. *Id.* It was eventually answered by enactment of the [Retirement Equity Act (REA) of 1984]. Legislative history of the REA provides:
The bill clarifies the spendthrift provisions of the Internal Revenue Code by providing new rules for the treatment of certain domestic relations orders. The bill creates an exception to the ERISA preemption provision with respect to these orders. The bill provides procedures to be followed by a plan administrator and an alternate payee (a child, spouse, or former spouse of a participant) with respect to domestic relations orders.
*Roth v. Roth*, 506 N.W.2d at 902.

For reasons not fully explained by the record, the parties agreed to a QDRO in 2006 that would materially and substantively modify the division of marital property as stated in the Final Decree of Divorce. To the extent the 2006 QDRO materially and substantively modifies the division of marital property as expressed in the Final Decree of Divorce that had become a final judgment, the 2006 QDRO is unenforceable and must be vacated.[9] See Johnson, 37 S.W.3d at 895; see also Cook, 2008 WL 555692, at *7. As this court has stated in several opinions, parties may not amend the terms of the property division in a final judgment by a subsequent agreement, such as a QDRO. Cook, 2008 WL 555692, at *7; see Maxwell v. Maxwell, No. 01A01–9402–CV–00086, 1994 WL 527134, at *2 (Tenn.Ct.App. Sept. 28, 1994) (vacating a QDRO that was ordered by the court after the divorce decree had become final because the QDRO was inconsistent with the parties' divorce decree); see also Lagrone v. Lagrone, 1996 WL 512032, at *3 (vacating a QDRO that did not conform to the provisions of the Final Decree of divorce which had become final before the QDRO was entered). In Cook, the ex-wife contended that her ex-husband was contractually obligated by the terms of a post-final judgment QDRO because "it was the last [QDRO] signed by both Husband and Wife." Id. Specifically, the ex-wife contended her ex-husband had waived any objections to the QDRO at issue because he had signed an essentially identical QDRO (which the plan administrator had rejected for technical reasons not germane to this appeal). Id. at *8. On appeal, this court rejected her argument explaining that the divorce decree incorporating the parties' MDA, which had become a final judgment, was "the controlling document that sets forth the division of property." Id. Significant to the issue presented here, we also stated that "[t]he terms of the Judgment, including the property division, cannot be altered by a subsequent document, even if such a document is signed by both parties." Id.

The QDRO and the MDA were incorporated into the Final Decree of Divorce, which became a final, non-appealable judgment in 1997. Therefore, the terms and provisions of the Final Decree, including those of the MDA and QDRO incorporated therein, were not subject to modification when the parties entered into the 2006 QDRO. See Johnson, 37 S.W.3d at 895; Towner, 858 S.W.2d at 892; Vanatta, 701 S.W.2d at 827. Accordingly, the 2006 QDRO is unenforceable to the extent it materially and substantively modifies the division of marital property as expressed in the Final Decree of Divorce.

Having determined that the 2006 QDRO is unenforceable, we now look to the Final Decree of Divorce, and the MDA and initial QDRO incorporated therein, to determine the rights and responsibilities of the parties. The interpretation of a judgment is a question of law. Ziobrowski v. Ziobrowski, No. M2006–02359–COA–R3–CV, 2007 WL 4530460, at *3 (Tenn.Ct.App. Dec. 20, 2007) (no Tenn. R.App. P. 11 application filed). We are to construe judgments as we do other written instruments, and the determinative factor is the intention of the court as collected from all parts of the judgment. Id. at *4 (citing

9. The limited role of a QDRO is to facilitate the former spouse receiving the interest awarded by the court in the other spouse's retirement or pension plan. See Lagrone v. Lagrone, No. 01A01–9603–CH–00125, 1996 WL 512032, at *3 (Tenn.Ct.App. Sept. 11, 1996) (stating the purpose of the QDRO is "to allow Wife to reach the Husband's interest in the 401(k) plan as allowed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461").

*Lagrone*, 1996 WL 512032, at *2; *Branch v. Branch*, 35 Tenn.App. 552, 249 S.W.2d 581 (1952)). The construction of a judgment should give force and effect to every word of it, if possible, and make all of the parts consistent, effective, and reasonable. *Id.*

Giving force and effect to every relevant word in the MDA and initial QDRO, and making all of the parts consistent, effective, and reasonable, we have determined the parties agreed that Wife shall receive 40% of all such benefits and rights accrued up to the execution of the MDA, that Wife "shall be entitled to a pro-rata share of any employer-provided early retirement subsidy provided to ... Husband on the date of his retirement," and that she shall be treated as "the surviving spouse" of Husband for purposes of determining benefits payable under "a qualified pre-retirement survivor annuity and qualified joint and survivor annuity."

### CONTEMPT

The trial court found Husband to be in criminal contempt for willfully violating the "Final Decree of Divorce and the Qualified Domestic Relations Order (QDRO) which was entered at the time of the parties' 1997 divorce." Specifically, the trial court found that Husband "failed to properly and timely designate [Wife] as his survivor beneficiary ..." when he retired in 2004.

■■■ There are three essential elements to criminal contempt: "(1) a court order, (2) the defendant's violation of that order, and (3) proof that the defendant willfully violated that order." *Foster v. Foster*, No. M2006–01277–COA–R3–CV, 2007 WL 4530813, at *5 (Tenn.Ct.App. Dec. 20, 2007) (no Tenn. R.App. P. 11 application filed) (citing *Huffnagle v. Huffnagle*, No. M2003–02651–COA–R3–CV, 2005 WL 2989603, at *2 (Tenn.Ct.App.

Nov. 7, 2005)). We have already determined that Husband was obligated pursuant to the Final Decree of Divorce to designate Wife as the surviving beneficiary "for purposes of determining benefits payable under a qualified pre-retirement survivor annuity and qualified joint and survivor annuity." Therefore, there was a court order. It is undisputed that Husband failed to designate Wife as the surviving beneficiary when he retired. Therefore, Husband violated the court's order. Having determined that Wife proved the first two elements of criminal contempt, we must now determine whether Husband's violation of the order was willful, which must be proven beyond a reasonable doubt. *See Foster*, 2007 WL 4530813, at *5; *Huffnagle*, 2005 WL 2989603, at *2.

■■■ A person charged with criminal contempt is "presumed innocent and may not be found to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order." *Long v. McAllister–Long*, 221 S.W.3d 1, 13 (Tenn. Ct.App.2006) (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn.1996); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn.Ct.App. 1993)). If the defendant is found guilty by the trial court, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the verdict of guilt. *Black*, 938 S.W.2d at 399. When the sufficiency of the evidence in a criminal contempt case is raised in an appeal, this court must review the record to determine if the evidence in the record supports the finding of fact of guilt beyond a reasonable doubt, and "if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt" we are to set aside the finding of guilt. *See* Tenn. R.App. P. 13(e) (directing that "findings of guilt in criminal actions shall be set aside if

the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt"). We have determined the proof is insufficient to establish that his failure to designate her as the survivor beneficiary was willful.

Only two witnesses testified on the subject of willfulness. One was Paul Fealk, the managing attorney of United Auto Workers (UAW) Legal Services Plan. Mr. Fealk testified that he began assisting Husband after Husband had retired to prepare a QDRO that would comply with the pension guidelines as well as the court's orders. Mr. Fealk explained that he did not file a QDRO on Husband's behalf; rather, he provided them to Wife's counsel. Significantly, Mr. Fealk did not attempt to assist Husband until after Husband had retired and after Husband had already failed to designate Wife as the surviving spouse. Mr. Fealk also testified that he was unaware that Husband's failure to designate her as the surviving spouse could not be corrected at a later date.

The only other evidence offered on the subject was through the testimony of Husband. He testified that when he went to see the benefits representative to retire, he knew Wife had to be named surviving spouse. Husband testified that the benefits representative told him that Wife would get her own paperwork. As Husband explained it, he "just assumed it was taken care of because it was in the divorce decree," and he did not know that Wife was not going to be designated as the surviving spouse.

The record indicates that the trial court "rejected" Husband's "excuses" for failing to comply with the court's orders. It is undisputed that Husband failed to designate Wife as the surviving spouse, and even though his excuses were rejected by the trial court, there is still no evidence

that his failure to see that she was designated as the surviving spouse was willful. To the contrary, Mr. Fealk testified that at Husband's request he was assisting Husband to comply with the court orders.

Based upon the foregoing, we find the evidence insufficient to establish beyond a reasonable doubt that Husband willfully violated the order to have Wife designated as the surviving spouse. We therefore reverse the finding of criminal contempt.

### EARLY RETIREMENT BENEFITS

The trial court determined that Wife was "entitled to twenty-nine percent (29%) of [Husband's] gross retirement payments, notwithstanding the fact that he opted for early retirement" because "[t]he original 1997 QDRO specifically addressed the division of any early retirement benefits." Husband contends the trial court erred in awarding a percentage of his early retirement supplement to Wife. We find no merit to this argument.

As we determined earlier, the QDRO contemporaneously entered with the Final Decree provided in pertinent part that Wife "shall be entitled to a pro-rata share of any employer-provided early retirement subsidy provided to ... Husband on the date of his retirement." Although the MDA did not specifically award Wife a share of Husband's early-retirement benefit, the initial QDRO contemporaneously entered with the MDA and Final Decree did. Treating the initial QDRO as part of the parties' agreement to divide the marital property as *Thornton v. Thornton*, 746 N.W.2d at 629–30, instructs, the Final Decree of Divorce expressly provides that Wife shall be entitled to a pro-rata share of Husband's early retirement subsidy. Therefore, the trial court did not err by awarding Wife a pro-rata share of Husband's early retirement benefit.

## ATTORNEY'S FEES

■ The trial court awarded Wife attorney's fees and expenses pursuant to paragraph 30 of the MDA. Husband contends the award of attorney's fees should be vacated if he is not in contempt. We have determined the issue of contempt is not determinative of the issue concerning attorney's fees.

The MDA provides:

### 30. *Attorney Fees for Breach.*

The parties agree that if either party breaches this Agreement or fails to perform the terms and conditions of this Agreement, resulting in the necessity to file suit in any Court to enforce any provision of this Agreement, the prevailing party shall be entitled, in addition to any judgment rendered, to an award of reasonable attorney fees plus the costs of said cause.

Although we found the evidence insufficient to establish beyond a reasonable doubt that Husband willfully violated the court's order to designate Wife as the surviving spouse, it is undisputed that Husband's actions prevented Wife from being designated as the surviving spouse, which constitutes a breach of the agreement. Whether his acts and omissions were willful or not is of no consequence to the issue of attorney's fees. The MDA provides that the prevailing party shall be entitled, in addition to any judgment rendered, to an award of reasonable attorney's fees plus the costs of said cause. Wife prevailed on most of the issues concerning Husband's breach of the MDA. We, therefore, affirm the award of attorney's fees and expenses to Wife. Further, we find that she is entitled to recover her reasonable and necessary attorney's fees and expenses incurred on appeal, the amount of which shall be determined by the trial court on remand.

## IN CONCLUSION

The judgment of the trial court is reversed in part and affirmed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against appellant, Michael A. Pruitt.