IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2017

## PAMELA ANNETTE DOTSON v. WILLIE JEFFERSON DOTSON

**Appeal from the Circuit Court for Sumner County
No. 24632-C Joe H. Thompson, Judge**

_____

### No. M2017-00807-COA-R3-CV

_____

This post-divorce dispute concerns the enforcement of a retirement benefits provision in a marital dissolution agreement. After the defendant retired, he refused to pay any portion of his retirement benefits to his ex-wife based on his interpretation of their marital dissolution agreement. His ex-wife disagreed with his interpretation and petitioned the trial court to enforce their agreement. Both parties moved for summary judgment. The trial court denied the defendant's motion and granted his ex-wife's cross-motion. Upon review, we affirm the trial court in all respects and award the ex-wife her attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Jeffrey O. Powell, Hendersonville, Tennessee, for the appellant, Willie Jefferson Dotson.

Grayson Smith Cannon, Gallatin, Tennessee, for the appellee, Pamela Annette Dotson.

**I.**

On September 7, 2004, Pamela Annette Dotson ("Wife") and Willie Jefferson Dotson ("Husband") divorced. The final decree of divorce approved and incorporated the parties' marital dissolution agreement ("MDA"). The MDA was "a final settlement of all property rights" between Husband and Wife and applied to "all property now owned by Husband and Wife, individually or jointly, or any property that either of them may acquire in the future." Both parties acknowledged that the MDA included all of their assets.[2]

As part of the property settlement, Husband and Wife agreed to a division of Husband's retirement benefits. Specifically, the MDA provided:

> The parties acknowledge that certain interests of the Husband in the 401-K [sic] retirement benefits provided by Husband's employer, The Nashville Electric Service, are marital property and that the Wife is entitled to share in these interests so that the [sic] she shall receive fifty (50%) thereof as accumulated from the date of the parties' marriage to the date of the divorce. The parties agree that a separate Qualified Domestic Relations Order shall be entered to effect the division of this asset.

As agreed, the circuit court entered a contemporaneous Qualified Domestic Relations Order ("QDRO"), approved by counsel for both parties.[3] The QDRO assigned Wife fifty percent of Husband's "vested pension benefits" from his employment at Nashville Electric Service ("NES") that had accumulated during the parties' marriage, including "all income and benefits, under all of the various accounts and/or subaccounts established on behalf of [Husband]." But the Plan Administrator rejected the QDRO because NES, as a municipal entity, did not accept QDROs on its retirement plans. *See*

---

[1] Under the rules of this Court, as a memorandum opinion, this opinion may not be published, "cited[,] or relied on for any reason in any unrelated case." Tenn. Ct. App. R. 10.

[2] The MDA provided:

> The parties acknowledge that there are no other assets owned by them, either jointly or individually, and that they have no interest in any assets, which are not reflected by the terms of this Agreement. The parties warrant and represent that they have made a full disclosure to each other of all assets in which they have an interest.

[3] A QDRO allows an alternate payee to receive all or a portion of the benefits payable to a participant under a private pension plan. *See Pruitt v. Pruitt*, 293 S.W.3d 537, 543 n.8 (Tenn. Ct. App. 2008); *Custer v. Custer*, 776 S.W.2d 92, 95 (Tenn. Ct. App. 1988).

*Lanius v. Nashville Elec. Serv.*, 181 S.W.3d 661, 664 (Tenn. 2005); Marlene E. Moses & Manuel B. Russ, *QDRO and State/Local Government Pensions*, Tenn. B.J., May 2016, at 30. No further action was taken before Husband's retirement.

On June 1, 2015, Husband retired. Shortly thereafter he began receiving retirement benefits from NES. It is undisputed that Husband never had a 401(k) retirement plan. All of Husband's retirement benefits that accumulated during the marriage came from a defined benefit pension plan and a 457 deferred compensation plan established for NES employees. When Husband refused to pay any portion of his benefits to Wife, she filed a petition in the Circuit Court for Sumner County, Tennessee, to enforce the retirement benefits provision in the MDA. She also requested an award of attorney's fees.

Husband moved for summary judgment, arguing that Wife was only entitled to fifty percent of any 401(k) retirement benefits and that he received no such benefits. In her cross-motion for summary judgment, Wife contended that, when read together, the MDA and the QDRO provided for the division of any retirement benefits that had accumulated during the marriage, whether or not those benefits came from a 401(k) plan.

The trial court denied Husband's motion and granted Wife's cross-motion. Following an evidentiary hearing, the court awarded Wife a judgment of $27,442, representing her share of the retirement benefits Husband had already received and the attorney's fees Wife incurred in enforcing the terms of the MDA. The court also entered a new QDRO for the future benefits Husband would receive from the defined benefit pension plan.[4] Husband appealed both the trial court's summary judgment ruling and the award of attorney's fees.

## II.

### A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. As noted above, both parties moved for summary judgment. When considering cross-motions for summary judgment, the trial court "must rule on each party's motion on an individual and separate basis." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 83 (Tenn. 2010). For the respective competing motions, the trial court must view the evidence in the light most favorable to

---

[4] In 2016, NES began accepting QDROs on the defined benefit pension plan, but not the 457 plan. *See* Tenn. Code Ann. § 26-2-105(c) (2017).

the opposing party and draw all reasonable inferences in the opposing party's favor. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

The division of marital property in an MDA remains contractual even after approved and incorporated into a divorce decree. *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001). Contract interpretation is a question of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). On appeal, the trial court's interpretation of a contract is not entitled to a presumption of correctness. *Angus v. W. Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). We review the relevant documents de novo and "reach our own independent conclusions regarding their meaning and legal import." *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011) (citing *Guiliano*, 995 S.W.2d at 95 and *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)).

In interpreting a contract, our role is "to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009). We first look for the parties' intent as expressed in the natural and ordinary meaning of the words used in the contract. *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). If the language used by the parties is clear and unambiguous, we need go no further. *Id.* But our focus is not limited to one word or phrase. Rather, we ascertain the intent of the parties from the entire context of their agreement. *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004), *abrogated on other grounds by Eberbach v. Eberbach*, 535 S.W.3d 467 (Tenn. 2017); *Davidson v. Davidson*, 916 S.W.2d 918, 922 (Tenn. Ct. App. 1995).

Where, as here, the parties' contract expressly refers to and incorporates another document, we interpret both documents together. *McCall v. Towne Square, Inc.*, 503 S.W.2d 180, 183 (Tenn. 1973); *Pruitt v. Pruitt*, 293 S.W.3d 537, 543 (Tenn. Ct. App. 2008); *Graber v. Graber*, No. W2003-01180-COA-R3-CV, 2003 WL 23099689, at *3 (Tenn. Ct. App. Dec. 31, 2003). And we strive to construe all provisions in a contract harmoniously, ensuring each provision has some effect, if possible. *Guiliano*, 995 S.W.2d at 95; *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009). Under the MDA and the QDRO, Wife was awarded fifty percent of Husband's retirement benefits from NES accumulated during the marriage. The parties acknowledged in the MDA that Husband's retirement benefits from NES were marital property, but described

4

Husband's interest as "401-K [sic] retirement benefits." The QDRO clarified that Husband's interest included pension benefits and benefits from other retirement accounts at NES that had been established on Husband's behalf during the marriage.

Giving effect to both the MDA and the QDRO, as we must, Wife was entitled to fifty percent of Husband's retirement benefits from NES during the relevant time period. Husband warranted that the MDA included all of his assets. To adopt Husband's interpretation, we would have to ignore the language in the MDA that it applied to "all property now owned by Husband and Wife, individually or jointly, or any property that either of them may acquire in the future" and conclude that the parties intended to divide a non-existent asset. *See Hamblen Cty. v. City of Morristown*, 656 S.W.2d 331, 334 (Tenn. 1983) (agreeing that even when a contract is unambiguous, a court may consider the parties' circumstances at the time the contract was formed to determine its meaning); *Hathaway v. Hathaway*, 98 S.W.3d 675, 678 (Tenn. Ct. App. 2002). We conclude the trial court properly granted Wife's motion for summary judgment.

## B.

Wife's request for an award of attorney's fees is based on this provision in the MDA:

> [I]n the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, and if successful, he or she shall also be entitled to a judgment for reasonable expenses including attorney fees incurred in prosecuting the action.

On appeal, Husband does not dispute the amount of fees awarded to Wife, only whether it was reasonably necessary for Wife to bring this action. Husband admitted that he refused to share any of the benefits he received upon retirement with Wife. As we have explained above, Wife was entitled to fifty percent of his retirement benefits accumulated during the marriage. We agree with the trial court that it was necessary for Wife to bring this action and she was successful in her enforcement effort. Thus, we affirm the trial court's award of attorney's fees. For the same reason, we grant Wife's request for an award of attorney's fees incurred on appeal and remand this case for the trial court to determine a reasonable amount. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 478-79 (Tenn. 2017) (holding that appellate courts lack discretion to deny an award of attorney's fees mandated by a valid MDA).

## III.

Because Wife is entitled to fifty percent of Husband's retirement benefits from NES accumulated during the marriage, we affirm the trial court's grant of summary

judgment to Wife and the denial of Husband's motion for summary judgment. We also affirm the trial court's award of attorney's fees to Wife as mandated by the MDA and conclude that Wife is entitled to an award of attorney's fees incurred on appeal. We remand this case to the trial court for a determination of the appropriate amount of fees.

_____
W. NEAL MCBRAYER, JUDGE