IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2019 Session

## DORIS MPOYI v. RICHARD T. MPOYI

**Appeal from the Chancery Court for Rutherford County**
**No. 09-0934DR      J. Mark Rogers, Judge**

_____

### No. M2018-01816-COA-R3-CV
_____

Ex-Husband appeals from a qualified domestic relations order ("QDRO"), which was entered several years after the final decree of divorce. Ex-Husband complains that the QDRO grants his ex-wife benefits that she was not entitled to under the final decree of divorce. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Richard T. Mpoyi, Murfreesboro, Tennessee, pro se appellant.

No brief filed on behalf of the appellee, Doris Mpoyi.

### MEMORANDUM OPINION[1]

In 2009, Doris Mpoyi filed for divorce from Richard T. Mpoyi. In May 2010, the chancery court entered a final decree of divorce. Among other things, the decree classified and divided the parties' retirement accounts. With respect to Dr. Mpoyi's retirement accounts, the decree provided as follows:

> The Husband shall receive his 401(k) retirement through Great-West Retirement Services with an approximate balance in the amount of Eight Thousand Three Hundred Forty Eight and 23/100 Dollars ($8,348.23). The

---

[1] Under the rules of this Court, as a memorandum opinion, this opinion may not be published, "cited[,] or relied on for any reason in any unrelated case." Tenn. Ct. App. R. 10.

Husband's 401(k) retirement through ING with an approximate balance in the amount of Ninety Six Thousand Two Hundred and 00/100 Dollars ($96,200.00) shall be divided so that the Wife shall receive thirty (30) percent as of the date of the divorce and the Husband shall receive the remaining seventy (70) percent.

Both parties had concerns with the final decree and sought to alter or amend or "clarify" the court's ruling. Specifically, with respect to Dr. Mpoyi's retirement, the decree included inconsistent language and did not recognize that the Great West Retirement Services and ING accounts were held as part of Dr. Mpoyi's Middle Tennessee State University retirement plan, where he was a professor.

On March 14, 2011, the court entered an order resolving the post-trial motions. The court struck the inconsistent language in the decree but otherwise determined that "it [was] appropriate to leave the division of marital property as is."

Despite entry of the order, counsel for Ms. Mpoyi did not submit a proposed QDRO until June 2018. Pertinent to this appeal, the proposed QDRO recited that "the parties were married to each other on September 29, 1987 and were divorced on May 10, 2010 . . . ." The QDRO also recited that "the parties have stipulated that the court shall enter this Order." With respect to the ING, now Voya Financial, Inc., account, the QDRO provided as follows:

The Plan shall assign to [Ms. Mpoyi] an amount equal to 30% of [Dr. Mpoyi's] total vested account balance as of May 10, 2010. (The Valuation date.)

[Ms. Mpoyi's] benefit will be adjusted for investment earnings and losses subsequent from the valuation date to the date a separate account is established for [Ms. Mpoyi].

The court entered the QDRO as proposed.

Within thirty days, Dr. Mpoyi moved to alter or amend the QDRO. *See* Tenn. R. Civ. P. 59.04. The motion complained of "a number of inaccuracies" in the QDRO, including the date of the parties' marriage and the date of the divorce. Dr. Mpoyi denied stipulating to the entry of the order, and he asserted that the QDRO was inconsistent with the terms of the final decree of divorce.

The court denied Dr. Mpoyi's motion. And it ordered that Voya process the QDRO as submitted. This appeal from Dr. Mpoyi followed.

2

We review the ruling on a motion to alter or amend for an abuse of discretion. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and . . . the lower court's legal determinations de novo without any presumption of correctness." *Id.* at 525.

Dr. Mpoyi represents himself on appeal. As a pro se appellant, we accord him "a certain amount of leeway" in considering his brief. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat. Bank, Inc.*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997)). As we perceive it, Dr. Mpoyi raises two issues related to the QDRO.

The first issue relates to whether the QDRO deviates from the final decree of divorce. In particular, Dr. Mpoyi argues that Ms. Mpoyi's benefit should not be adjusted for investment earnings and losses subsequent to the May 10, 2010 valuation date as provided in the QDRO. Because the trial court found the approximate balance of the account was $96,200 and awarded Ms. Mpoyi 30% of the account as of the date of the divorce, Dr. Mpoyi contends that the QDRO should have provided that Ms. Mpoyi receive the fixed sum of $28,860, which is 30% of $96,200. Due to investment gains, Ms. Mpoyi's share of the plan has increased significantly. As Dr. Mpoyi explains:

> [I]nstead of transferring $28,860.00 to [Ms. Mpoyi's] account, Voya has transferred $85,419.47 on October 11, 2018. This means that in one day (October 11, 2018), my retirement revenues have been reduced by $56,559.47. I strongly believe that this needs to be corrected.

A QDRO allows an alternate payee to receive all or a portion of the benefits payable to a participant under a private pension plan. 29 U.S.C. § 1056(d) (2018); *see also Pruitt v. Pruitt*, 293 S.W.3d 537, 543 n.8 (Tenn. Ct. App. 2008); *Custer v. Custer*, 776 S.W.2d 92, 95 (Tenn. Ct. App. 1988). It is used to carry out orders "relat[ing] to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(B)(ii)(I). A QDRO may not be used to "materially and substantively modif[y] the division of marital property as expressed in the Final Decree of Divorce that

3

had become a final judgment." *Pruitt*, 293 S.W.3d at 544. To the extent it does modify the division of marital property, the "QDRO is unenforceable and must be vacated." *Id.*

We conclude that the language in the QDRO adjusting Ms. Mpoyi's share of the Voya account for investment earnings and losses subsequent to the valuation date is consistent with the final decree. It is implicit in the division of the retirement account that the parties will bear potential earnings or losses in the account until the division can be carried out through a QDRO. *See Case v. Case*, 794 N.E.2d 514, 519 (Ind. Ct. App. 2003) ("hold[ing] that absent express language stating otherwise, the decree implicitly contemplated that both parties would share in the risks and rewards associated with the investment plan."). Had it intended to award Ms. Mpoyi a fixed sum from the account, the court could have done so. *See* 29 U.S.C. § 1056(d)(3)(C)(ii) (requiring the QDRO to specify "the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined").

The second issue relates to "a number of inaccuracies and incorrect information" included in the QDRO. The alleged inaccuracies and incorrect information include the dates of the parties' marriage and divorce and the assertion of a stipulation concerning the entry of the QDRO. Dr. Mpoyi also asserts that the QDRO contains "wrong assumptions." For example, he states that he "will never designate the Alternative Payee as beneficiary (a possibility raised in the order)" and that the QDRO should not include language contemplating circumstances in which the alternate payee is not a spouse or former spouse when Ms. Mpoyi is clearly his former spouse.

To the extent any of these matters constitute error, we conclude the error was harmless. *See* Tenn. R. App. 36(b). Unlike with his first issue, Dr. Mpoyi does not contend that the alleged errors involve a substantial right or describe how he was prejudiced by the inaccuracies or incorrect information or wrong assumptions.

For the foregoing reasons, we affirm the order of the chancery court.

_____
W. NEAL MCBRAYER, JUDGE

4