IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 2025 Session

## BEVERLY JEAN CULLINS PICKETT v. GARRY LYNN PICKETT

**Appeal from the Chancery Court for Lincoln County**
**No. 15710     J. B. Cox, Chancellor**

_____

**No. M2024-01612-COA-R3-CV**

_____

In this divorce action, a husband challenges the trial court's finding that the parties' jointly owned real property transmuted into marital property during a nine-year marriage. The husband also asserts that the trial court erred in finding him in contempt of the final decree before the decree became a final order. Discerning no error, we affirm the trial court as to the finding that the parties' home became marital property during the marriage. We reverse, however, the finding of contempt against the husband.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Vacated in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Benjamin Lewis, Murfreesboro, Tennessee, for the appellant, Garry Lynn Pickett.

Pat M. Fraley, Fayetteville, Tennessee, for the appellee, Beverly Jean Cullins Pickett.

## OPINION

### BACKGROUND

Beverly Pickett ("Wife") and Garry Pickett ("Husband") married in 2014. At the time of the marriage, Husband owned three tracts of farmland in Franklin County, Tennessee and Lincoln County, Tennessee. He uses the tracts for growing/selling hay and cattle farming. In February of 2012, Husband purchased, in cash, a home at 442 Shady Grove Road (the "Shady Grove house") for $150,000. According to his deposition testimony, which the parties entered for proof, Husband purchased the Shady Grove house with funds he obtained by selling a different piece of property that he inherited from his

parents. In November of 2013, prior to the parties' marriage, Husband executed a quit claim deed conveying to Wife a one-half undivided interest, with the right of survivorship, in the Shady Grove house. The parties resided at the Shady Grove house during the marriage and made various improvements to the property.

On February 27, 2023, Wife filed a complaint for divorce in the Lincoln County Chancery Court ("trial court"), alleging cruel and inhuman treatment by Husband. Alternatively, Wife alleged irreconcilable differences between the parties. She also sought alimony pendente lite, exclusive use of the Shady Grove house, and access to all joint bank accounts. Husband filed an answer and counterclaim for divorce, denying any cruel and inhuman treatment against Wife but agreeing that the parties had irreconcilable differences. Husband also counter-sued Wife for divorce, alleging inappropriate marital conduct by Wife. On July 21, 2023, Husband filed a motion asking the trial court for an order directing the sale of the Shady Grove house. The motion provides that the house should be "sold at public auction as soon as reasonably possible and that the proceeds from said sale be deposited into the Registry of the [trial court] for division, if necessary, after hearing . . ." The parties attended mediation on September 11, 2023, but were unable to settle the matter, and the case proceeded to a final hearing on April 4, 2024. In her asset and debt list submitted for trial, Wife categorized the Shady Grove house as joint property acquired before marriage but agreed that Husband's other real property is his separate property acquired prior to the marriage. In his trial brief, Husband asserted that he used money from a family inheritance to purchase the Shady Grove house and the acreage on which it sits. According to Husband,

> [i]n November of 2013, [Husband] conveyed to [Wife] an undivided interest with right of survivorship in the house and 17 acres. . . . The proof will clearly show that no contribution was made by [Wife] for the purchase of the marital home or any of the several significant improvements made. All were paid for by funds from [Husband's] farming operation. [Husband] agrees that the property should be sold. [Husband] should be entitled to recover his $150,000 initial purchase of the property. The remaining proceeds of sale should be divided equally between the parties. There is no mortgage on the subject property.

Neither party retained a court reporter, and there is no transcript of the final hearing. The trial court entered its memorandum opinion on May 3, 2024. As relevant to the issues on appeal, the trial court found:

> As to classification of marital property, the Court finds as follows:
>
> 1. Prescott Smith, an expert witness and real estate appraiser, testified to the value of the seventeen-acre tract on property located at 442 Shady Grove Road.

2. He assigned a value to this tract of $445,000.00.

3. He attributed any increase in value since the parties purchased the tract to market driven forces.

4. 442 Shady Grove Road is marital property and must be sold and the proceeds divided.

\*      \*      \*

Having classified the property and debt of the parties, the Court must next attempt to equitably divide the marital estate. To that end, the Court finds that the house and land at 442 Shady Grove Road must be sold and the proceeds, after expenses, divided equally. The Court is not persuaded by Husband's assertions that he should get $150,000.00 before the Court awards division. The property was purchased and is held as joint tenants with right of survivorship. This indicates complete transmutation of the Shady Grove Rd property.

The trial court further concluded that the Shady Grove house should be listed for sale with a realtor of the parties' choosing but that the trial court would select a realtor if the parties could not agree within fifteen days of the entry of the final decree. The trial court entered the final decree of divorce on May 20, 2024.

Wife filed a motion for criminal contempt against Husband on June 6, 2024. Wife alleged Husband would not cooperate in selling the Shady Grove house, averring that "to date, the parties' marital home and real estate have not been listed for sale and [Husband] will not discuss the name of a specific realtor with [Wife]." Husband filed a motion to alter or amend the trial court's judgment on June 20, 2024, arguing that Husband was entitled to a $150,000 offset from any sale proceeds from the Shady Grove house.

Following a hearing on June 18, 2024, the trial court entered an order finding Husband in criminal contempt. Among other things, the trial court found that Husband "refus[es] to discuss with [Wife] a realtor for sale of the parties' marital home and real estate located at 442 Shady Grove Road resulting in no listing contract or agreement regarding a realtor." The trial court sentenced Husband to ten days in jail and ordered him to pay the attorney's fees Wife incurred in filing the petition for contempt. The trial court entered an order on September 24, 2024, denying Husband's motion to alter or amend. As to the marital home, the trial court reasoned that:

[Husband] alleges he is due credit for the contribution of his separate $150,000.00 to the purchase of 242 [sic] Shady Grove Road. This portion is also respectfully overruled. The proof in the record is that a transmutation

- 3 -

occurred when [Husband] titled the property as joint tenants with a right of survivorship. The argument that the act did not occur simultaneously with his acquisition of the property lends strength to the Court's ruling. He transmuted the property, period. Clearly, Husband chose to transmute the property by how he voluntarily had it titled. This argument is without merit.

Following entry of the above-mentioned order, Husband timely appealed to this Court.

## ISSUES

Husband raises two issues on appeal:

I.      Whether the trial court erred in classifying the Shady Grove house as marital property.

II.     Whether the trial court erred in holding Husband in contempt of a court order that was not final.

In her posture as appellee, Wife requests that she be awarded her attorney's fees incurred on appeal.

## DISCUSSION

Husband's first issue deals with classification of an asset, specifically, the Shady Grove house. The classification of property as either separate or marital is "a question of fact to be determined in light of all relevant circumstances." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009) (citing *Langford v. Langford*, 421 S.W.2d 632, 634 (1967)). The trial court's findings of fact are reviewed *de novo* with a presumption of correctness, and "we must honor those findings unless there is evidence which preponderates to the contrary." *Snodgrass*, 295 S.W.3d at 245 (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007)). Conclusions of law, however, are reviewed *de novo* with no presumption of correctness. *Id.* at 245–46.

To adjudicate a divorce, trial courts must classify parties' property as either separate or marital prior to dividing the property between them. *Eldridge v. Eldridge*, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). Only marital property is subject to property division, so "it is of primary importance for the trial court to classify property as separate or marital." *Id.* (citing Tenn. Code Ann. § 36-4-121(a) (2001)); *see also Brown v. Brown*, 913 S.W.2d 163, 166 (Tenn. Ct. App. 1994) ("The division of a marital estate necessarily begins with the classification of the parties' property as either marital or separate property."). Separate property is, *inter alia*, "[a]ll real and personal property owned by a spouse before marriage[.]" Tenn. Code Ann. § 36-4-121(a). Separate property can become marital

property through transmutation or commingling. Our Supreme Court has explained transmutation and commingling as follows:

> Separate property becomes marital property by commingling if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur.... Transmutation occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.... The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (citing 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987)). The doctrines of transmutation and commingling rest on the principle that separate property is not "indelibly separate" but rather can be "treated 'in such a way as to give evidence of an intention' that it is to become marital property." *Carter v. Browne*, No. W2018-00429-COA-R3-CV, 2019 WL 424201, at *9 (Tenn. Ct. App. Feb. 4, 2019) (quoting *Smith v. Smith*, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002)); *see also Eldridge*, 137 S.W.3d at 13 ("[S]eparate property can become part of the marital estate due to the parties' treatment of the separate property.").

Here, Husband argues that the trial court erred in classifying the Shady Grove house as marital property. It is undisputed that in 2013, prior to the parties' marriage, Husband conveyed to Wife "a one-half undivided interest with the right-of-survivorship in" the Shady Grove house. Thus, according to Husband, the property is not property acquired by the parties during the marriage but rather the parties' respective separate property they both brought to the marriage. As such, Husband claims that the trial court lacked the authority to dispose of the property, as only marital property is subject to division. Husband asserts that the proper way to deal with the property is 1) "a partition action should the parties desire to divest themselves of common ownership[,]" or 2) the trial court could have classified the property as separate and analyzed same under the theory of transmutation. However, to the extent the trial court did find transmutation, Husband posits this is error because Wife did not contribute to any increase in the home's value.

First, we agree with Husband that the parties' respective interests in the house were initially their separate property. Both Husband and Wife acquired said interests in the Shady Grove house prior to the marriage. Nonetheless, like the trial court, we are unpersuaded by Husband's assertion that the home did not transmute into marital property.

- 5 -

The factors we look to when considering transmutation of a home include: "(1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property." *Hayes v. Hayes*, No. W2010-02015-COA-R3-CV, 2012 WL 4936282, at *12 (Tenn. Ct. App. Oct. 18, 2012) (quoting *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *5 (Tenn. Ct. App. Sept. 1, 2006)).

In the present case, the parties already owned and lived in the Shady Grove house when they married in 2014. Clearly, they treated the property as the marital home. Husband argues on appeal that how the home is titled is irrelevant because it occurred before the parties married. This fact does not change the reality, however, that the parties treated the home as marital during their relationship, and Husband's actions suggest his intent for Wife to share in the Shady Grove house. While a home "should not be classified as marital property simply because the parties have lived in it[,]" *Takeda v. Takeda*, No. E2006-02499-COA-R3-CV, 2007 WL 4374036, at *3 (Tenn. Ct. App. Dec. 17, 2007), the parties also made improvements to the property during the marriage. For example, they added decking and fenced the entire property. Husband also argues that Wife did not work during the marriage and, therefore, did not contribute to the home's upkeep and improvements. However, money earned during a marriage is generally marital property. Consequently, the fact that money for improvements primarily came from Husband's farming endeavors does not mean that Husband is solely responsible for the home's updates. Moreover, the statement of the evidence prepared and entered by the trial court notes the parties' disagreement over the extent to which Wife contributed to the upkeep of Husband's farmland. The trial court noted this disagreement but still ultimately concluded that Wife contributed to the marriage and the home's appreciation. Accordingly, the trial court clearly credited Wife's testimony on this issue, a conclusion we will not second guess in the absence of a more complete record.

Accordingly, we agree with the trial court's assessment that the Shady Grove house transmuted into marital property and that same must be divided as part of the marital estate.[1] Thus, we affirm the trial court.

---

[1] Husband also urges that the trial court did not sufficiently analyze transmutation in its final order and that the order is insufficient. While the order could benefit from a more thorough analysis on transmutation, vacatur is not necessary in this case. The trial court's conclusion is readily ascertainable, and it is clear what factual findings the trial court relied on in making its decision. In this case, it is prudent to "soldier on" despite the order's inadequacies. *See Bailey v. Bailey*, No. M2022-01467-COA-R3-CV, 2025 WL 1517411, at *12 (Tenn. Ct. App. May 28, 2025) (explaining that in the face of an insufficient final order, this Court may opt to, depending upon the circumstances, conduct a de novo review of the record to determine where the preponderance of the evidence lies).

Husband's second issue addresses contempt, specifically, the trial court's conclusion that Husband was in contempt of the final decree of divorce. When reviewing a trial court's decision on criminal contempt, we "do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Moody v. Hutchison*, 159 S.W.3d 15, 25–26 (Tenn. Ct. App. 2004) (quoting *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 WL 343799, at *2 (Tenn. Ct. App. Feb. 23, 2004)). Further, we "review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review." *Id.* The three essential elements of criminal contempt in this context are

> "'(1) a court order, (2) the defendant's violation of that order, and (3) proof that the defendant willfully violated that order.'" *Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008) (citing *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. Dec. 20, 2007)). In addition, the plaintiff must show the following four elements: (1) the order allegedly violated was lawful; (2) the order was clear and unambiguous; (3) the individual charged did in fact violate the order; and (4) the individual acted willfully in so violating the order. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008)[.]

*Hill v. Hill*, 682 S.W.3d 184, 210 (Tenn. Ct. App. 2023). Here, Husband contends that he could not be in contempt of the trial court's final order because that order was not final when Wife filed her contempt petition. Husband cites Tennessee Rule of Civil Procedure 62.01, which provides:

> Except as otherwise provided in this Rule, no execution shall issue upon a judgment, nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry. In injunction and receivership actions, and in actions that remove a public officer as otherwise provided by law or that award, change or otherwise affect the custody of a minor child, an interlocutory or final judgment shall not be stayed after entry unless otherwise ordered by the court and upon such terms as to bond or otherwise as it deems proper to secure the other party. The party in whose favor judgment is entered may also obtain execution or take proceedings to enforce the judgment prior to expiration of the 30-day period if the party against whom judgment is entered is about fraudulently to dispose of, conceal or remove his or her property, thereby endangering satisfaction of the judgment.

In construing Rule 62.01, we have previously held that a garnishment should not issue before a judgment awarding alimony becomes final. *Forgey-Lewis v. Lewis*, No. E2009-00851-COA-R3-CV, 2011 WL 332710, at *14 (Tenn. Ct. App. Jan. 28, 2011). In

*Forgey-Lewis*, this Court reversed the trial court as to a husband's motion to quash his wife's garnishment, where "the [g]arnishment was issued before entry of the final judgment and therefore violated Tenn. R. Civ. P. 62.01." *Id.* at \*13; *see also Jackson v. Jackson*, No. M2010-00575-COA-R3-CV, 2011 WL 1197592, at \*1 (Tenn. Ct. App. Mar. 30, 2011) (relying on *Forgey-Lewis* and concluding that the trial court erred by assessing statutory interest on a child support award for a period of time in which motions to alter or amend remained pending, and the relevant order was therefore non-final). Similarly, in *Pope v. Pope*, this Court modified a trial court's award of alimony arrears where the trial court's award covered the thirty days following entry of the trial court's order. No. M2011-00077-COA-R3-CV, 2011 WL 5598896, at \*3 (Tenn. Ct. App. Nov. 16, 2011). We explained that the alimony award became enforceable "[o]nce the decree became final . . ." *Id.*

In light of the foregoing, Husband is correct as to his second issue, and the trial court erred in holding Husband in contempt before thirty days passed following the entry of the final decree of divorce. The order was not yet final when Wife filed her petition for contempt, and Husband filed a timely motion to alter or amend within thirty days of the final decree. Therefore, enforcement proceedings were stayed as to the judgment. Accordingly, this portion of the trial court's judgment is vacated.

Finally, in her posture as appellee, Wife asserts that she is entitled to her attorney's fees incurred on appeal. "The determination of whether to award attorney's fees on appeal is within the sole discretion of the appellate court." *Trezevant v. Trezevant*, 568 S.W.3d 595, 641 (Tenn. Ct. App. 2018) (citing *Moses v. Moses*, No. E2008-00257-COA-R3-CV, 2009 WL 838105, at \*10 (Tenn. Ct. App. Mar. 31, 2009)). Under all of the circumstances, we decline to award Wife her attorney's fees incurred on appeal.

## CONCLUSION

The ruling of the Chancery Court for Lincoln County is hereby affirmed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed one-half to the appellant, Garry Lynn Pickett, and one-half to the appellee, Beverly Jean Cullins Pickett, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE