IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 1, 2022

## NASSER LUBY SALEH v. LYSTACHA G. PRATT

**Appeal from the Circuit Court for Knox County**
**No. 149277   Gregory S. McMillan, Judge**

_____

**No. E2021-00965-COA-R3-CV**
_____

This appeal arises after the trial court found the defendant in contempt of an order of protection and sentenced him to 510 days of incarceration.  We affirm the judgment holding the appellant in contempt in its entirety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and CARMA DENNIS MCGEE, J., joined.

Edward G. White, III, Knoxville, Tennessee, for the appellant, Nasser Luby Saleh.

Robert Downs, Knoxville, Tennessee, for the appellee, Lystacha G. Pratt.

**OPINION**
**I.  Background**

Lystacha G. Pratt ("Appellee") obtained an order of protection for one year from the General Sessions Court of Coffee County, Tennessee, entered on September 30, 2019. The respondent was Nasser Luby Saleh ("Appellant"), the father of Appellee's minor child. The order provided, inter alia, as follows:

**The Court orders Respondent to:**

☑ Obey all orders on this form.
☑ Not abuse or threaten to abuse Petitioner or Petitioner's minor children.
☑ Not stalk or threaten to stalk Petitioner or Petitioner's minor children.

**Other Orders to the Respondent** (Check all that apply):

☑ **No Contact**
You must not come about the Petitioner (including coming by or to a shared residence) for any purpose and must not contact ☑ Petitioner AND ☑ Petitioner's children, either directly or indirectly, by phone, email, messages, text messages, mail or any other type of communication or contact.

☑ **Stay Away**
You must stay away from the ☑ Petitioner's home ☑ Petitioner's workplace ☑ Children's home and workplace.

☑ **Personal Conduct —**
☑ You must not cause intentional damage to the Petitioner's (or Petitioner's children's) property or interfere with the utilities at their home(s).

☑ You must not hurt or threaten to hurt any animals owned or kept by the Petitioner/Petitioner's children.

\*\*\*

☑ **Control of all Types of Property**
☑ Petitioner only ☑ and/or Petitioner's children are the only ones who can live in the property at:

_____

(address)

\*\*\*

☑ **Orders to the Respondent about Firearms:**
… You must not have, or attempt to have, receive or attempt to receive or in any other way get any firearm while this or any later protective order is in effect….

The order was scheduled to end on September 30, 2020.

On July 8, 2020, August 20, 2020, August 28, 2020, September 3, 2020, September 17, 2020, and September 24, 2020, Appellee filed "Motion[s] For An Order To Show Cause And/Or Writ Of Attachment," in which she alleged that Appellant committed multiple violations of the 2019 order of protection. On April 13, 2021, the trial court in this matter conducted a hearing on all six of Appellee's motions for show cause. Appellee offered proof through testimony, photos, and text messages. Appellant's counsel moved to

dismiss, claiming that Appellee failed to establish that the alleged violations took place in Knox County, Tennessee, in accordance with Tennessee Code Annotated section 36-3-612(b).[1] Appellant's counsel asserted that the accusations could not be prosecuted for lack of jurisdiction.

The Knox County circuit court's review of 19 exhibits established that Appellant was in Knox County during the time some of the text messages were sent (finding that Appellant was in Knoxville on August 20, 2020, and for all texts between August 20, 2020 to August 23, 2020).[2] The court determined that 51 actionable violations of the order of protection had occurred. Appellant was sentenced to incarceration "for a period of 510 days" beginning April 13, 2021, with a 1/4th day credit for good behavior and the option to petition the court for release after serving one year from April 13, 2021. On April 29, 2021, a new "Order of Protection" prohibiting contact and communication was entered by the trial court for a period of five years ending April 12, 2026.

On August 23, 2021, a "Final Order" was entered by the court following a hearing on Appellant's Rule 60 motion. The court ruled as follows:

1) Respondent erred in filing a Rule 60 Motion, as this was not yet a final judgment.

2) Respondent was not entitled to relief on any facet of his motion but specifically as follows:

a. Coffee County General Sessions Court had personal jurisdiction over Respondent by nature of his presence at the hearing on the original Order of Protection. His signature on the Order of Protection demonstrates he was present and had notice of the entry of the final order. His signature on the order matched his signature on the motion in this matter, demonstrating that he was present and the court had personal jurisdiction.

---

[1](b) Either the court that originally issued the order of protection or restraining order or a court having jurisdiction over orders of protection or restraining orders in the county where the alleged violation of the order occurred shall have the authority and jurisdiction to conduct the contempt hearing . . . . If the court conducting the contempt hearing is not the same court that originally issued the order of protection or restraining order, the court conducting the hearing shall have the same authority to punish as contempt a violation of the order of protection or restraining order as the court originally issuing the order.

Tenn. Code Ann. § 36-3-612(b).

[2] The proof convinced the trial court that it had subject matter jurisdiction over those particular text messages located in "Exhibits 11, 12, 13, 15, and 16," but that venue was improper over any allegations of violations arising from text messages located in the other exhibits.

- 3 -

b.  Respondent failed to raise any issue regarding personal jurisdiction at …  trial, thus it was waived, upon the Order of Protection in Coffee County becoming a final order, thirty days after it was entered.

c.  Subject Matter Jurisdiction was proper as this Court relied on a certified copy of the Order of Protection from Coffee County, bearing the seal of the Clerk, in determining that the Coffee County Order was valid.

***

e.  Respondent had almost 8 months of freedom from incarceration prior to his final Show Cause hearing, during which time he failed to subpoena any witnesses to support the claims in his motion.

f.  No violations were found regarding any matter relating to the veracity of Petitioner's testimony concerning allegations relying on Facebook.

g.  The Court stands by the sentence imposed, as it was just and necessary. The four Show Causes filed between July 8, 2020 and September 3, 2020 made it clear to the Court that Respondent's continued efforts to contact the Petitioner would not cease and the magnitude of his violations warrants the maximum sentence of jail time, with the multiple violations served consecutively.

Appellant filed a timely notice of appeal pro se.

## II.  Issues

The issues raised by Appellant on appeal are as follows:

a.  The underlying order of protection was void ab initio due to failure to effect proper service of process pursuant to Tennessee Code Annotated section 36-3-605(c)[3] constituting a violation of Appellant's Fourteenth

---

[3] (c) The court shall cause a copy of the petition and notice of the date set for the hearing on such petition, as well as a copy of any ex parte order of protection, to be served upon the respondent at least five (5) days prior to such hearing. An ex parte order issued pursuant to this part shall be personally served upon the respondent . . . such notice shall advise the respondent that the respondent may be represented by counsel. In every case, unless the court finds that the action would create a threat of serious harm to the minor, when a petitioner is under eighteen (18) years of age, a copy of the petition, notice of hearing and any ex parte order of protection shall also be served on the parents of the minor child, or in the event that the parents are not living together and jointly caring for the child, upon the primary residential parent, pursuant to the requirements of this

- 4 -

Amendment right to due process.

b. The trial court erred in imposing a sentence of 510 days incarceration to be served 100% with a 1/4th day credit for good behavior because the sentence was excessive.

### III. Standard of Review

Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2002); *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). On appeal, great weight is given to "the trial court's factual findings that are determined on credibility." *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005).

We have discussed the elements of criminal contempt[4] as follows:

Tennessee Code Annotated section 29-9-102 authorizes courts to "inflict punishments for contempts of court" for, inter alia, "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts[.]" Tenn. Code Ann. § 29-9-102(3). In this situation, "[t]here are three essential elements to criminal contempt: '(1) a court order, (2) the defendant's violation of that order, and (3) proof that the defendant willfully violated that order.'" *Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008) (citing *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. Dec. 20, 2007)). In addition, the plaintiff must show the following four elements: (1) the order allegedly violated was lawful; (2) the order was clear and unambiguous; (3) the individual charged did in fact violate the order; and (4) the individual

---

section.

Tenn. Code Ann. §36-3-605(c).

[4] Criminal contempt is "quasi criminal in character." *State v. Daugherty*, 191 S.W. 974, 974 (Tenn. 1917). Those charged with criminal contempt under Tennessee Code Annotated section 29-9-102 are not entitled to the full panoply of rights afforded to criminal defendants. *See Baker v. State*, 417 S.W.3d 428, 439 (Tenn. 2013) (holding, i.e., that those convicted of criminal contempt are not entitled to seek post-conviction relief, but must utilize the rules for seeking relief from judgment pursuant to the Tennessee Rules of Civil Procedure).

acted willfully in so violating the order. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011)(stating that the four-element analysis outlined in *Konvalinka* applies to criminal and civil contempt actions). As this Court has previously explained,

> A person charged with criminal contempt is "presumed innocent and may not be found to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *Thigpen v. Thigpen*, 874 S.W.3d 51, 53 (Tenn. Ct. App. 1993)). If the defendant is found guilty by the trial court, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the verdict of guilt. *Black*, 938 S.W.2d at 399. When the sufficiency of the evidence in a criminal contempt case is raised in an appeal, this court must review the record to determine if the evidence in the record supports the finding of fact of guilt beyond a reasonable doubt, and "if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt" we are to set aside the finding of guilt. *See* Tenn. R. App. P. 13(e) (directing that "findings of guilt in criminal actions shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt").

*Pruitt*, 293 S.W.3d at 545-46.

In reviewing the appropriateness of a sentence imposed by the trial court, this court applies an abuse of discretion standard, with a presumption of reasonableness afforded to within-range sentencing decisions. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see also Worley v. Whitaker*, No. E2010-00153-COA-R3-CV, 2011 WL 1202060, at *8 (Tenn. Ct. App. Mar. 31, 2011) (applying an abuse of discretion standard to a review of a criminal contempt proceeding). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* In reviewing a sentence for multiple counts of criminal contempt, the court determines if a sentence was the "least severe measure necessary to achieve the purpose for which the sentence is imposed." *State v. Wood*, 91 S.W.3d 769, 776 (Tenn. Ct. App. 2002).

## IV.  Discussion

### a.

Appellant argues that the underlying order of protection was entered following a failure to effect proper service of process pursuant to Tennessee Code Annotated section 36-6-605(c), thereby constituting a violation of Appellant's Fourteenth Amendment right to due process. Section 36-6-605(c) demands a five-day notice requirement for order of protection matters. Appellant asserts that the legislature determined five days' notice was the least amount of notice allowed for an individual served with a petition for an order of protection to be able to prepare an adequate defense to ensure preservation of one's due process rights. In the instant case, the ex parte order of protection was entered by the General Sessions Court for Coffee County on September 24, 2019, commanding Appellant to appear for trial on the petition on September 30, 2019.  Appellant was served with a copy of the order of protection and petition on September 27, 2019, directing him to appear for trial on the petition on September 30, 2019.  The order of protection was entered on September 30, 2019.  As Appellant received less than the requisite five-day notice, he argues that his due process rights were violated.

Appellee argues that Appellant waived the issue of a lack of proper service pursuant to Tennessee Code Annotated section 36-6-605(c) by failing to raise the issue with the court that entered the order, and by signing for service of the final order of protection. "Objections to the jurisdiction of the general sessions court . . . shall be made before the hearing, or they will be considered as waived." Tenn. Code Ann. § 16-15-505. Another method of waiver "is by making a voluntary 'general appearance' before the court." *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). "[A] party's consent to the entry of a judgment against it constitutes a general appearance." *Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988).

If Appellant was going to raise the issue of the lack of notice to him of the September 30, 2019 hearing, he needed to raise the issue when he made a general appearance in the Coffee County hearing on the order of protection on September 30, 2019.  Instead, Appellant signed for service of the order and failed to take any other steps to challenge the issue of proper notice of the order of protection until after the trial date of April 13, 2021. We find that Appellant waived any objection on this ground.

### b.

"A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties." *Konvalinka*, 249 S.W.3d. at 355.  A person can violate a court order "'by either refusing to perform an act mandated by the order or performing an act forbidden by the order.'" *In re Samuel P.*, W2016-01665-COA-R3-JV, 2018 WL 1046784, at *8 (Tenn. Ct. App. Feb. 23, 2018)(quoting *Overnite Transp. Co. v. Teamsters*

- 7 -

*Local Union No. 480*, 172 S.W.3d 507, 510-11 (Tenn. 2005)). When a court makes a finding of contempt based on the contemnor's disobedience of a court order, "'the order alleged to have been violated must be clear, specific, and unambiguous.'" *Id.* (quoting *Konvalinka*, 249 S.W.3d at 354). Courts may punish contempts of court based on a party's willful disobedience of any lawful order of the court. Tenn. Code Ann. § 29-9-102(3); *Mawn v. Tarquino*, No. M2019-00933-COA-R3-CV, 2020 WL 1491368, at *3 (Tenn. Ct. App. Mar. 27, 2020). "[I]n order for a party's disobedience of a court order to be 'willful' and subject to criminal contempt under section 29-9-102(3), the act must be 'done voluntarily and intentionally and with the specific intent to do something the law forbids.'" *Id.* at *6 (citing *State v. Smith*, No. E2009-00202-CCA-R3-DC, 2010 WL 5276902, at *6 (Tenn. Crim. App. Dec. 17, 2010)). In the context of criminal contempt, willfulness has two elements: (1) intentional conduct; and (2) a culpable state of mind. *See State v. Beeler*, 387 S.W.3d 511, 523 (Tenn. 2012).

In *Wood*, the appellant was found in criminal contempt for 36 violations of an order of protection and was ordered to serve the maximum sentence of 10 days for each violation, equaling 360 days to be served at 100%. *Wood*, 91 S.W.3d at 771. The *Wood* court held that:

> There is … a principle embodied in the criminal statutes that we think applies wherever punitive incarceration is considered. Tenn. Code Ann. § 40-35-103(4) requires that the sentence be the least severe measure necessary to achieve the purpose for which the sentence is imposed.

*Id.* at 776. Citing a United States Supreme Court case, the *Wood* court outlined certain factors to consider in reviewing contempt sentences: (1) "the extent of the willful and deliberate defiance of the court's order," (2) "the seriousness of the consequences of the contumacious behavior," (3) "the necessity of effectively terminating the defendant's contumacious behavior," and (4) "the importance of deterring such acts in the future." *Id.* (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 303 (1947)).

The trial court in this matter referenced the filing of four show causes between July 8, 2020 and September 3, 2020 and continued efforts of Appellant to contact Appellee as the basis for imposing the maximum sentence. The order of protection specifically ordered Appellant to "not contact Petitioner … by phone, email, messages, text messages, mail or any other type of communication or contact." The court found Appellant was in Knox County on August 20, 2020, and for all texts between August 20, 2020 and August 23, 2020 at 10:58 p.m.; thus, venue was established for the court to have subject matter jurisdiction over those particular text messages. Fifty-one text messages occurred over the relevant period of time. Appellant concedes that the trial court can sentence him ten days for each count of contempt, but he argues that this is not the "least severe measure necessary to achieve the purpose for which the sentence is imposed."

Appellant argues that missing from the analysis of the trial court was whether the text messages demonstrated "violent or threatening behavior." *Wood*, 91 S.W.3d at 777. Appellant acknowledges that text messages sent in violation of an order of protection are clearly not permissible, but contends the nature of the violation must be considered with regard to the sentence imposed as the court set forth in *Wood* when it emphasized the factor of whether an act was violent or threatening. *Id.* He asserts, at worst, the most offensive of the text messages occurred on September 23, 2020, at 9:12 a.m., beginning with, "Good morning fucking bitch." Appellant argues that despite the content of that text being offensive and crass, it did not threaten Appellee and did not constitute an act or threat of violence. Additionally, some of the text messages dealt with the threat of suicide and self-harm, such as violation 15, "I'm just going to kill myself." Appellant further argues that the sender's threat was not to the Appellee or a threat of violence directed at the Appellee; rather, it was a threat of self-harm. Other text messages were in the nature of a guise pretending to be the Department of Children's Services ("DCS"), such as violation 25, "To schedule an appointment for a check of welfare check (sic) for Aiche P[.]" Appellant asserts that texts such as violation 28 stating, "I'll get a lawyer," or making other statements to the effect of taking legal action did not rise to the level of violence or threats. The remainder of the texts dealt with professions of love, such as violation 1, "I love you I miss you." Memes of a sexual nature were included, such as a naked Homer Simpson and Marge Simpson, listed as Violation 43, and a request for a ride or place to stay, such as Violation 45. Appellant contends that the 51 violations, when reviewed under the standard of *Wood,* do not support the sentence imposed on him.

Appellee argues that Appellant cannot show the trial court abused its discretion in its sentence. As to the first prong of *Wood*, the test was met upon the trial court finding a valid order of protection at the time Appellant contacted Appellee at least 510 times between June 9, 2020 and September 19, 2020. Although venue could not be established for all 510 violations in Knox County, the trial court acknowledged that Appellant contacted Appellee 510 times in direct violation of the order of protection entered on September 30, 2019 in Coffee County. With the substantial proof of these violations, Appellee notes that the proof revealed Appellant willfully and deliberately violated the 2019 order of protection.

The second prong of *Wood* tests how willful and disobedient Appellant's behavior was when determining a proper sentence for direct contempt of court. Appellee contends that creating multiple fake phone numbers in order to hide the fact that you are calling an individual who obtained an order of protection against you in order to lessen the chance that such a violation could be tied directly to you demonstrated clear proof of willful disobedience of a valid court order. As to the third prong in *Wood,* requiring the trial court to look at whether a "necessity of effectively terminating the defendant's contumacious behavior exists," Appellant violated the order of protection to intimidate and pressure Appellee; his actions in this case were inherently willfully disobedient to the trial court's orders.

The fourth prong of *Wood* addresses the importance of deterring such acts in the future. Appellant's actions revealed that he had no respect for the court's order or Appellee's wishes. Appellant not only willfully and disobediently violated a valid protective order, but he did so 510 times in spite of clearly understanding the scope of the order of protection.

In our view, the "violent or threatening behavior" language in *Wood* was merely dicta and described how the court determined the appropriate sentence in that particular case. We find that the *Wood* court did not create an additional requirement of proof that the offending party engaged in "violent or threatening behavior" as part of his contemptuous acts in determining the least severe measure of punishment to achieve the sentence imposed.

"Criminal contempt should be imposed in appropriate cases when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice. Thus, sanctions imposed for criminal contempt generally are both punitive and unconditional." *In re Sneed*, 302 S.W.3d 825, 827-28 (Tenn. 2010) (internal quotation marks and citations omitted). Appellant has shown no respect for the rule of law in this case. In light of Appellant's continued disregard for the order of protection, we find the sentence necessary "to achieve the purpose for which the sentence [was] imposed." *Wood*, 91 S.W.3d at 776. Appellant has failed to illustrate how the evidence introduced at trial was insufficient to support the trial court's verdict of guilt. Thus, he has not overcome the presumption of guilt on appeal. *See Black*, 938 S.W.2d at 399. We find no abuse of discretion by the trial court in its disposition of Appellant's criminal contempt proceeding.

## V. Conclusion

The judgment of the trial court is affirmed, and this cause is remanded to the trial court for collection of the costs below. The costs on appeal are assessed against Appellant, Nasser Luby Saleh.

_____
JOHN W. MCCLARTY, JUDGE