IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2025

## MICHAEL RAY SCHOLL v. JOLENE RENEE SCHOLL

**Appeal from the Chancery Court for Montgomery County**
**No. MC CH CV DI 23 377      Ben Dean, Chancellor[1]**

---

### No. M2024-01759-COA-R3-CV

---

This matter concerns criminal contempt and an order of protection. Jolene Renee (Scholl) Bauer ("Wife") and Michael Ray Scholl ("Husband") divorced in the Chancery Court for Montgomery County ("the Trial Court"). Husband was ordered not to go around Wife's work or residence. Wife later filed a motion for criminal contempt against Husband alleging that he went around her residence, the parties' former marital residence, in violation of the court's order. She also sought an order of protection, citing Husband's history of violence toward her. After a hearing, the Trial Court granted Wife an order of protection. The Trial Court found Husband guilty on two counts of criminal contempt for texting Wife's neighbor to ask what was happening with Wife and the house. Husband appeals. We affirm the Trial Court's granting Wife an order of protection. However, we find that Husband did not receive adequate notice of the charges against him and that the evidence is insufficient to support the criminal contempt findings by the Trial Court of Husband's guilt beyond a reasonable doubt. We reverse the findings of criminal contempt against Husband. We therefore affirm, in part, and reverse, in part, the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JEFFREY USMAN and VALERIE L. SMITH, JJ., joined.

Michael Ray Scholl, Clarksville, Tennessee, Pro Se appellant.

Jolene Renee (Scholl) Bauer, East Peoria, Illinois, Pro Se appellee.

---

[1] In April 2025, Chancellor Ben Dean recused himself after having rendered the judgments being appealed. Chancellor Kimberly Lund presided thereafter.

# OPINION

## Background

Husband and Wife married in 2007. Two children were born of the marriage. In December 2023, Wife sued Husband for divorce in the Trial Court. In April 2024, a hearing was conducted on the parties' divorce. One of the issues in this matter has been Husband's conduct toward Wife, which Wife described as violent and abusive. The Trial Court required Husband to wear a GPS monitor. On May 7, 2024, Wife filed a petition for an order of protection against Husband. On May 17, 2024, the Trial Court dismissed the petition without a hearing. The Trial Court wrote in its order that it had "clarified prior orders regarding contact." Thus, the merits of the petition went unaddressed. On June 6, 2024, the Trial Court entered an order stating that the order of protection would be dismissed by separate order. The June 6, 2024, order also provided: "That the Defendant/Husband, Michael Ray Scholl, is hereby only restrained from being where the Plaintiff/Wife, Jolene Renee Scholl, currently resides and/or works."

On July 26, 2024, Wife filed her verified motion for criminal contempt and notice of arraignment. Wife alleged two counts—one regarding Husband going around her residence and the other regarding his failure to comply with the GPS monitor requirement. In her motion, Wife alleged, in part:

> 1. On June 6, 2024, this Court entered an order restraining the Defendant from being where the Mother resides and/ or works.
> 2. The Defendant has come around the Mother's residence. The Defendant has sent the Mother text messages about the look of the grass and telling her that she is using the tractor wrong.
> 3. The Defendant has also sent text messages informing the Mother that he knows what types of vehicle are parking in her driveway.
> 4. A final hearing was held in this matter on April 23, 2024. Thereafter, the Court entered an Order requiring Defendant to have a GPS tracking monitor placed upon him within ten (10) days of the trial date.
> 5. As of the filing of this Petition, Defendant has failed to have a GPS tracking monitor placed upon him.
> 6. The Defendant continues to be a threat to the Mother.
> 7. Defendant has willfully and knowingly failed to comply with the Court's order entered June 6, 2024 by continuing to come about Mother's residence.
> 8. Defendant has willfully and knowingly failed to comply with the Court's GPS Tracker Order entered July 17, 2024 by failing to have a GPS tracke[r] placed upon his person within ten (10) days of the final hearing.

**CRIMINAL CONTEMPT**
**COUNT 1:**

Pursuant to the Order of the Court dated June 6, 2024, Defendant was not to come around the place where the Mother resides or works. Defendant, Michael Ray Scholl, did knowingly and willfully come about the Mother's residence on or about June 25, 2024 in willful violation of this Court's Order entered on or about June 6, 2024.

**COUNT 2:**

Pursuant to the Order of the Court dated July 17, 2024, Defendant was to have a GPS tracking device placed upon his person within ten (10) days of the trial date. Defendant, Michael Ray Scholl, did knowingly and willfully fail to have a GPS tracking device placed upon his person within ten (10) days of the Court's Order in willful violation of this Court's Order entered on or about July 17, 2024. This Count is ongoing in nature.

The Trial Court later relieved Husband of his obligation to wear a GPS tracker. In the final decree of divorce, the Trial Court stated in relevant part:

The Court issues a Permanent Injunction as set forth herein. The Father is ORDERED to not threaten, harass, annoy, or stalk the Mother. The Permanent Injunction is mandatory in nature, and requires the communication that he has with her to be limited to text messages about the Parties children. There shall not be any other communication other than by text. The Court warned the Father that if there's additional threats, harassment, or recording of the Mother being cursed at, or yelled at by the Father, that jail will be a likely outcome.

On August 30, 2024, Wife filed another petition for an order of protection against Husband. The Trial Court subsequently entered a temporary order of protection. On October 10, 2024, the Trial Court heard Wife's verified motion for criminal contempt and petition for order of protection against Husband. Both Husband and Wife testified at the hearing.

In the criminal contempt portion of the hearing, Wife took the stand first. Wife testified that she had reason to believe Husband had come around her residence despite his being ordered not to. Wife received a text from Husband saying: "There's a maroon truck at the house."[2] Wife thought this meant Husband was watching her every move. In another text, Husband asked Wife if she was moving anything out of the house.

---

[2] Exhibit 1 in the record reflects this exchange of texts:

On cross-examination, Wife was asked if she initiated the conversation with Husband. Wife was read texts she sent to Husband concerning listing the house. Wife testified that she would like to sell the house since she is single, and the property is nine acres. Asked if she had any proof that Husband went to the house, Wife said she did not know. On re-direct, Wife was asked if she had been allowed by the court to talk to Husband about their children and the house. Wife agreed that the issue was not the fact she and Husband were texting, but rather that Husband knew what kind of truck was in her driveway and whether people were moving into the house. Wife recounted various unusual occurrences at the house, such as her hubcaps being removed from her car and dead animals found by the back door. She also said that the neighbors were hostile toward her.

Husband testified next. Asked why he texted Wife about the truck at the house, Husband said: "Simply to relay the information coming from the neighbor." Husband explained that he was also concerned about the possibility of the house being robbed. Husband said he had not been by the house since the court told him not to go around it, and that he followed the court's order. On cross-examination, Husband acknowledged that someone else moving into the house was a concern of his. Wife's lawyer asked Husband if he could get out his phone to prove that his neighbor sent him the text message regarding the truck at the house. The following exchange ensued:

> Q. Okay. So can we get your phone and you pull it up and prove that the neighbor actually said that?
> THE COURT: Get your phone out, sir.
> MS. BATES: He's been answering all the other (indiscernible).
> THE COURT: Yes. Go get it.
> (Pause in proceedings.)
> THE COURT: Sir, before -- as you're looking for that, other than them communicating to you about what's going on with her, have you and this

---

[Wife:] Yes we do.
[Husband:] I would like to sell the house but I don't believe the property was divided fair and equitable I'm going to file an appeal so things will be on hold for a while. I have been told it's a fairly lengthy process
[Wife:] Ok
[Wife:] You can keep paying the mortgage and ill still make money off it I really don't care
[Husband:] I'm aware
[Husband:] There's a maroon truck at the house
[Wife:] Why are you spying on the house
[Husband:] The neighbor sent me a message I was just relaying it to you. Unless you have already moved someone into the house

neighbor had any other communications about any other issues -- as you look through there.

THE WITNESS: Uh-huh.

THE COURT: Since y'all's divorce is what I am talking about. I don't mean back before this.

THE WITNESS: He mentioned something about the incident she was talking about. I -- I think it was that incident.

THE COURT: Let's go back to y'all's date of divorce. On that string of messages --

Come over, Ms. Spata. You can look through those messages. Come over here and approach.

We'll just pull it up, and we're going to -- the proof is in the pudding. We're going to see what you've been sending, sir. I hope what you're telling us is true -- that you aren't initiating this, that it's just the neighbor's concern.

Now, go back to your trial date. It was in April.

We're just going to see if he's been stalking her or not. He didn't have to take the stand either, so. . .

THE WITNESS: Do you want me to go back to --

THE COURT: April -- your divorce, sir. Back when I told you don't stalk her again -- after that date. I want -- just turn it. Ms. Spata, she can look at it first, and then she can let Ms. Bates look at it. I want them to look at the messages that you've been dealing with this man who's been reporting to you what's going on in furtherance of me to make a determination about whether you continue to stalk her after I entered my oral order to you and since.

Husband acknowledged having asked the neighbor on June 23, 2024, if anyone was at the house. Husband also acknowledged asking the neighbor on June 25, 2024, if Wife was at the house. On June 27, 2024, the neighbor texted Husband that a maroon truck was at the house.

On re-direct, Husband testified that by June 23, 2024, he was still moving things out of the house and still trying to determine whether he could go back to retrieve items. He said Wife was not living there yet. Asked if he was trying to keep tabs on Wife, Husband said that he was just asking about the house. Husband said: "I was under the impression that she moves in, it's her residence -- current residence, and I'm not allowed to be there. But we were still selling the house. The house was still listed for sale. We were still working with the Realtor together." At the conclusion of Husband's testimony, the Trial Court scolded Husband for his actions and sentenced him to 20 days in jail for two counts of criminal contempt. The sentence was stayed.

-5-

After the criminal contempt portion of the hearing concluded, Wife's petition for an order of protection was heard. Wife testified to physical abuse at Husband's hands. Husband's counsel objected on grounds that there already had been a trial on these issues. The Trial Court overruled the objection, saying that the divorce trial was distinct from the hearing for an order of protection. Husband's counsel pointed out that there had been an order of protection dismissed since the divorce and argued that *res judicata* applied. The Trial Court rejected this argument. Proceeding with her testimony, Wife stated that the last time Husband physically abused her was one day before the divorce trial. Wife stated that Husband did not want her mowing the grass, so he hit her with his shoulder and left a mark. The Trial Court noted for the record that, during the divorce trial, Wife had marks and bruises on her body. Wife said that during her 17 years of marriage to Husband, he would hit and choke her. Husband also slapped, punched, and pushed her. Wife said that, five years earlier, Husband put a gun to her head. At the end of Wife's testimony, the Trial Court granted Wife an order of protection against Husband. Husband also was ordered to take 24 batterer's intervention classes.

In October 2024, the Trial Court entered an order finding Husband guilty of two counts of criminal contempt for his texts to the neighbor asking about Wife and the house. The Trial Court deemed Husband's behavior as stalking. With respect to the count pertaining to the GPS tracker, the Trial Court found Husband not guilty. In its order, the Trial Court found, in pertinent part:

1. Pursuant to the Court's Order dated June 6, 2024 and the Final Decree of Absolute Divorce entered on August 8, 2024, the Father was to stay away from the Mother's residence and was not to stalk or harass the Mother.
2. While the evidence was not conclusive as to if the Father had physically been present at the Mother's residence, evidence was presented that the Father had been stalking the Mother, [on father's cell phone.][3]
3. Evidence was presented that the Father was texting the neighbor to find out if the Mother was at the residence, if Mother was cutting the grass, and if there were other vehicles present at the home.
4. The Court finds that the Father texted the neighbor for information about the Mother on at least two occasions.
5. Viewing the testimony of this hearing in context with the trial testimony, it is clear to the Court that the Father was stalking the Mother in violation of the June 6, 2024 Order and the Final Decree of Absolute Divorce.
6. The Court finds beyond a reasonable doubt that the Father did violate this Court's order knowingly and willfully, and as such, this Court finds the Father GUILTY of two counts of Criminal Contempt.

---

[3] This bracketed material was handwritten.

The Trial Court also granted Wife an order of protection against Husband. With respect to Husband, the Trial Court found: "Continued to stalk after the divorce, in addition to numerous incidents of physical and psychological abuse and threats." The order of protection was to last one year, from October 10, 2024, through October 10, 2025. Husband could only be around Wife for the children's school and extracurricular activities, and they could communicate with one another only regarding their children and resolving their legal disputes. Husband timely appealed to this Court.

In December 2024, after Husband filed his appeal, the Trial Court conducted a review regarding its findings of criminal contempt. The Trial Court found that, based on the testimony of Wife, an unsworn statement by Husband, and arguments of counsel, incarceration was necessary to rein in Husband's behavior. The Trial Court ordered Husband to serve ten days of his sentence. Husband was further ordered to complete a non-self-reporting mental health evaluation and follow all recommendations. Husband filed for a stay of his sentence in this Court, which we granted.

## Discussion

Although not raised as an issue by either party, we begin by addressing the parties' briefs. The parties are pro se on appeal. As this Court explained in *Young v. Barrow*:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003). Tennessee Rule of Appellate Procedure 27 governs the contents of appellate briefs, as does Rule 6 of the Rules of the Tennessee Court of Appeals. An appellant's brief requires, as relevant, a table of contents, a table of authorities, a statement of the issues for review, a statement of the case laying out the procedural history of the case, a statement of facts, an argument section

backed by citation to relevant authority and the record, and a short conclusion. *See* Tenn. R. App. P. 27(a). With respect to appellees,

> The brief of appellee and all other parties shall conform to the foregoing requirements, except that items (3), (4), (5) (6) and 7(B) of subdivision (a) of this rule need not be included except to the extent that the presentation by the appellant is deemed unsatisfactory. If appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in his request for relief as well as the answer to the brief of appellant.

Tenn. R. App. P. 27(b). Both appellants and appellees are required to cite to the record and legal authority when appropriate. Meanwhile, Rule 6 of this Court states as relevant:

> (a) Written argument in regard to each issue on appeal shall contain:
>
> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.
>
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
>
> (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
>
> (4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.
>
> (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. Ct. App. R. 6. Litigants risk waiver of their issues on appeal if they do not comply with the rules for briefing. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). On the other hand, not every failure to comply with the rules for briefing will result in such a

drastic step. *See Total Garage Store, LLC v. Moody*, No. M2019-01342-COA-R3-CV, 2020 WL 6892012, at *6 (Tenn. Ct. App. Nov. 24, 2020), *no appl. perm. appeal filed* (declining to dismiss appeal simply because the appellant's brief was not a model for record citation).

Both parties' briefs have defects. Husband's brief lacks a statement of the issues, contrary to Tenn. R. App. P. 27(a)(4). That is a major omission. However, Husband's brief is clearly delineated into separate argument sections. We can readily discern what Husband's issues are even though he lacks a formal statement of the issues section. In general, Husband argues in a coherent way how he believes the Trial Court erred, citing applicable law and the record on appeal in the process. We have no difficulty determining what Husband is arguing and why. Therefore, we find that Husband's omission of a statement of the issues does not result in the waiver of his issues. We restate and consolidate Husband's multiple issues into the following dispositive ones: 1) whether the Trial Court erred in finding Husband in criminal contempt and 2) whether the Trial Court erred in granting Wife an order of protection against Husband.

Regarding Wife's brief, Wife purports to appeal the Trial Court's July 31, 2025, ruling on the parties' parenting plan and change of primary residential parent.[4] After several paragraphs laying out her views of the case, Wife requests as follows:

> I would like the order of protection to be upheld and extended for another 5 years; I would request that he provides his 12 guns to law enforcement. I would like primary custody to change back to me and my children to be allowed to move out of state with me and child support also be reviewed.

We note that, since filing her appellate brief, Wife has filed a number of documents in this Court, including filings in the Trial Court and an additional statement by Wife about the case. Respectfully, Wife's brief is seriously non-compliant with Tenn. R. App. P. 27 and Tenn. Ct. App. R. 6. Most glaringly, she does not explain how the Trial Court erred. Wife does not cite the record or any legal authority. We are unable to review Wife's purported issues without researching and arguing them for her, which is not our place to do. In view of the complete lack of appropriate citation to the record or legal authority in Wife's brief, or any specific argument for how the Trial Court erred in its judgment, Wife's purported issues are waived.

Turning to Husband's issues, we first address whether the Trial Court erred in finding Husband in criminal contempt. Husband argues that his convictions for criminal

---

[4] The record does not contain a Notice of Appeal of this ruling from the Trial Court. The Trial Court's July 2025 rulings as to the parties' parenting plan and change of primary residential parent are not before us in this appeal.

contempt must be reversed. In support of his argument, Husband asserts that notice of his charges was insufficient; that the evidence for his guilt failed to meet the beyond a reasonable doubt standard; that the Trial Court erred in making him disclose the contents of his cell phone on the stand; that the Trial Court lacked a legal basis for ordering him to complete a non-self-reporting mental health evaluation; and that the Trial Court abused its discretion by enforcing its contempt findings while an appeal was underway.

This Court has stated: "An issue regarding the sufficiency of notice provided regarding criminal contempt allegations presents a question of law, which we review *de novo*. However, '[a] trial court's use of its contempt power is within its sound discretion and will be reviewed by an appellate court under an abuse of discretion standard.'" *McClain v. McClain*, 539 S.W.3d 170, 187 (Tenn. Ct. App. 2017) (quoting *McLean v. McLean*, No. E2008-02796-COA-R3-CV, 2010 WL 2160752, at *3 (Tenn. Ct. App. May 28, 2010), *no appl. perm. appeal filed*) (citation omitted). Our Supreme Court has stated that "[a]n abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). Tennessee Rule of Criminal Procedure 42(b) provides, as relevant:

> **(b) Disposition on Notice and Hearing**. A criminal contempt shall be initiated on notice, except as provided in subdivision (a) of this rule.
>
> (1) *Content of Notice*. The criminal contempt notice shall:
>
> (A) state the time and place of the hearing;
>
> (B) allow the alleged contemner a reasonable time to prepare a defense; and
>
> (C) state the essential facts constituting the criminal contempt charged and describe it as such.
>
> (2) *Form of Notice*. The judge shall give the notice orally in open court in the presence of the alleged contemner or by written order, including an arrest order if warranted. The notice and order may also issue on application of the district attorney general, an attorney appointed by the court for that purpose, or an attorney representing a party in the case.

Tenn. R. Crim. P. 42(b). As to what constitutes sufficient notice in the criminal contempt context, this Court has explained:

Sufficient notice meeting the requirements of due process must be given as a prerequisite to a court's authority to punish a party for criminal contempt committed outside the presence of the court. *Storey v. Storey*, 835 S.W.2d 593, 599-600 (Tenn. Ct. App. 1992). Under Tenn. R. Crim. P. 42(b), a person facing a criminal contempt charge must "be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citation omitted). "Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment—not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous." *Id*. at 13-14.

*McLean*, 2010 WL 2160752, at *5.

In addition, we have discussed the elements of criminal contempt and the burden of proof for findings of criminal contempt as follows:

Tennessee Code Annotated section 29-9-102 authorizes courts to "inflict punishments for contempts of court" for, inter alia, "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts[.]" Tenn. Code Ann. § 29-9-102(3). In this situation, "[t]here are three essential elements to criminal contempt: '(1) a court order, (2) the defendant's violation of that order, and (3) proof that the defendant willfully violated that order.' " *Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008) (citing *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. Dec. 20, 2007)). In addition, the plaintiff must show the following four elements: (1) the order allegedly violated was lawful; (2) the order was clear and unambiguous; (3) the individual charged did in fact violate the order; and (4) the individual acted willfully in so violating the order. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) (stating that the four-element analysis outlined in *Konvalinka* applies to criminal and civil contempt actions). As this Court has previously explained,

A person charged with criminal contempt is "presumed innocent and may not be found to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)). If the defendant is found guilty by the trial court, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the verdict of guilt. *Black*, 938 S.W.2d at 399. When the sufficiency of the evidence in a criminal contempt case is raised in an appeal, this court must review the record to determine if the evidence in the record supports the finding of fact of guilt beyond a reasonable doubt, and "if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt" we are to set aside the finding of guilt. *See* Tenn. R. App. P. 13(e) (directing that "findings of guilt in criminal actions shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt").

*Pruitt*, 293 S.W.3d at 545-46.

*Mawn v. Tarquinio*, No. M2019-00933-COA-R3-CV, 2020 WL 1491368, at *3 (Tenn. Ct. App. March 27, 2020), *no appl. perm. appeal filed*. Meanwhile, "the admission of evidence lies within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion." *Dockery v. Dockery*, No. E2009-01059-COA-R3-CV, 2009 WL 3486662, at *7 (Tenn. Ct. App. Oct. 29, 2009), *no appl. perm. appeal filed*.

In her verified motion for contempt, Wife alleged in Count 1 that Husband violated the Trial Court's June 6, 2024, order in which Husband was ordered not to come around where Wife resides or works. Husband was found guilty of stalking Wife by texting her neighbor to ask what was going on at the house. Thus, there is a discrepancy in the essential facts constituting the criminal contempt charged and what Husband was later found guilty of. Ultimately, Husband was made to defend himself from texting a neighbor, not physically going around Wife as he was charged. Given this discrepancy, Husband lacked a reasonable opportunity to prepare a defense. Under these circumstances, we find that Husband did not receive adequate notice of the charges against him.

Husband argues further that, even under the Trial Court's own findings, he did not violate the Trial Court's June 6, 2024, order. The June 6, 2024, order prohibited Husband

from coming around Wife's residence or place of work. In its order finding Husband guilty of criminal contempt, the Trial Court stated that the evidence was "not conclusive" as to whether Husband ever went near Wife. As Husband points out, the burden of proof in a criminal contempt proceeding is beyond a reasonable doubt, which is a far cry from "not conclusive." To reiterate, the order Husband was charged with violating required him to stay away from Wife's work or residence. It did not bar him from texting the neighbor to ask about Wife or the house. Despite this, Husband was found guilty of criminal contempt for texting the neighbor to ask about Wife and the house. Based on the Trial Court's own findings, Husband did not violate the Trial Court's June 6, 2024, order. The evidence is insufficient to support the criminal contempt findings by the Trial Court of guilt beyond a reasonable doubt. We therefore reverse the Trial Court's findings of criminal contempt against Husband.[5] Our reversal of the criminal contempt findings also eliminates the requirement that Husband undergo a non-self-reporting mental health evaluation, which stemmed from the criminal contempt proceedings.

The next and final issue we address is whether the Trial Court erred in granting Wife an order of protection against Husband. The October 10, 2024, order of protection has expired. Nevertheless, Husband asks that we address this issue anyway. He notes that the order required him to take 24 BIP, or batterer's intervention, courses. He apparently has not taken these classes and, consequently, faces potential exposure to contempt charges. Given Husband's ongoing potential exposure to contempt charges if he does not take the classes, we agree that this issue should be addressed notwithstanding the order's expiration. Regarding orders of protection, this Court has stated:

> The trial court may issue an order of protection if "the petitioner has proven the allegation of domestic abuse, stalking, sexual exploitation of a minor, sexual assault, or a human trafficking offense by a preponderance of the evidence." Tenn. Code Ann. § 36-3-605(b). "Proving an allegation by a preponderance of the evidence requires a litigant to convince the trier-of-fact that the allegation is more likely true than not true." *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 825 n.19 (Tenn. Ct. App. 2005) (citing *Austin v. City of Memphis*, 684 S.W.2d 624, 634-35 (Tenn. Ct. App. 1984)).

*Aveille on Behalf of E.A. v. Moore*, No. W2024-00679-COA-R3-CV, 2025 WL 432842, at *2 (Tenn. Ct. App. Feb. 7, 2025), *no appl. perm. appeal filed*. The Trial Court found that Husband continued to stalk Wife after the divorce in addition to numerous other instances of physical and psychological abuse and threats. Stalking is defined by statute as:

---

[5] Husband also argues that the Trial Court's ordering him incarcerated during the appeal constituted an abuse of discretion. This Court granted Husband's request for a stay of his sentence. It is unclear what, if any, particular relief Husband asks for relative to this argument.

[A] willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Tenn. Code Ann. § 39-17-315(a)(4).

Husband argues that any testimony concerning his conduct prior to the May 17, 2024, dismissal of Wife's previous petition for an order of protection should not be considered on grounds of *res judicata*. Husband also cites Tennessee Rule of Civil Procedure 41.02(3) for the proposition that dismissal operates as an adjudication on the merits absent the court specifying otherwise. We have previously explained *res judicata* as follows:

Under the doctrine of *res judicata,* a final judgment on the merits that is rendered by a court of competent jurisdiction concludes the rights of the parties and their privies, and, with respect to them, bars a subsequent action involving the same claim or cause of action. *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995). It is a claim preclusion doctrine that prohibits multiple lawsuits between the litigants and their privies with respect to the issues which were or could have been litigated in the prior suit. *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). Accordingly, *res judicata* applies not only to issues actually raised and adjudicated in the prior lawsuit, but to "all claims and issues which were relevant and which could reasonably have been litigated in a prior action." *Am. Nat'l Bank and Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). It is a "rule of rest" that promotes finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976) (quoting 2 Freeman on Judgments, § 626, 1320 (5th ed. 1925)). In order for the doctrine of *res judicata* to apply, the prior judgment must have been final and concluded the rights of the parties on the merits. *Richardson,* 913 S.W.2d at 459. Additionally, the lawsuits must involve the same parties and the same cause of action or identical issues. *Id.* However, a party's failure to raise an issue or theory does not preserve that issue or theory as a ground for a subsequent lawsuit.

*Brown v. Shappley*, 290 S.W.3d 197, 200-01 (Tenn. Ct. App. 2008).

On May 7, 2024, Wife filed a petition for an order of protection. On May 17, 2024, the Trial Court dismissed this petition without a hearing, writing by hand that it had

"clarified prior orders regarding contact." Thus, the Trial Court explained and otherwise specified in its order that it had not addressed the merits of Wife's petition. Instead, the Trial Court merely opted at that time to clarify its other orders. This in no sense concluded the rights of the parties on the merits. Therefore, the doctrine of *res judicata* did not bar the Trial Court from considering Husband's behavior toward Wife from before May 17, 2024.

At the October 10, 2024, hearing, Wife testified in detail to being physically and verbally abused by Husband during their marriage. Wife described among other things having been slapped, punched, pushed, and choked by Husband. Wife testified further that she did not feel safe and wanted to be left alone. This unrebutted testimony by Wife reflects that she was abused extensively by Husband during their marriage, and she still feels unsafe. The Trial Court's decision to grant Wife's petition was based on a preponderance of the evidence at minimum, and the evidence does not preponderate against the Trial Court's findings. We affirm the Trial Court's granting Wife an order of protection against Husband.

## Conclusion

We affirm the Trial Court's granting Wife an order of protection against Husband. However, we reverse the findings of criminal contempt against Husband. The judgment of the Trial Court is thus affirmed, in part, and reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed one-half against the Appellant, Michael Ray Scholl, and his surety, if any, and one-half against the Appellee, Jolene Renee (Scholl) Bauer.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-15-